## MAESE *v.* HERMAN.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 226. Argued November 6, 7, 1901.—Decided January 6, 1902.

The sole authority to the General Land Office to issue the patent for the land in dispute in this case was the act of March 3, 1869, 15 Stat. 342; the patent was issued under that authority, and it does not admit of controversy that it must issue to the confirmee of Congress, viz.: the town of Las Vegas.

This court cannot assume that Congress approved the report of the Surveyor General unadvisedly, used the name of the town of Las Vegas unadvisedly, or intended primarily some other confirmee.

The town and its inhabitants having been recognized by Congress as having rights, and such rights having been ordered to be authenticated by a patent of the United States, it is the duty of the Land Office to issue that patent, to give the town and its inhabitants the benefit of that authentication, and to remit all controversies about it to other tribunals.

THIS is a bill in equity brought in the Supreme Court of the District of Columbia, praying for an injunction against respondents from issuing a patent to the town of Las Vegas, New Mexico, of the lands in the Las Vegas private land grant, or, if a patent has issued, to declare it to be void, or if a patent has not issued, to direct one to issue "to all of said lands, to the heirs, legal representatives and assigns of the said Juan de Dios Maese, Manuel Duran, Miguel Archuleta, José Antonio Cassaos, and those who were associated with them as the original grantees and as representatives of said original grantees, and that their title in and to said lands may be quieted, and said plaintiffs pray for such other and further and general relief as they may show themselves entitled to under the law and the facts."

There was a demurrer to the bill, which was sustained, and the complainants declining to amend their bill, it was dismissed.

An appeal was taken to the Court of Appeals, and the action of the Supreme Court of the District was affirmed. 17 D. C. App. 52.

The suit was brought by the complainants as heirs of the original grantees for themselves and others, who, it is alleged, are too numerous to be made parties. The defendants are sued in their official character. The facts as they appear from the bill are that on the 20th of March, 1835, Juan de Dios Maese, Miguel Archuleta, Manuel Duran and José Antonio Cassaos, for themselves and on behalf of twenty-five men, presented a petition to the corporation of El Bado, in the Territory of New Mexico, Mexico, for the grant and possession of the tract of land "commonly known as Las Vegas, on the Galenas River, which was desired for the cultivation of moderate crops and for pasture and watering places." The land was under the jurisdiction of El Bado, and was bounded as follows : " On the north by the Sappello River, on the south by the boundary of the grant of Don Antonio Ortiz, on the east by the Aguage de la Zegua, and on the west the boundary of the grant to San Miguel del Bado."

The tract contains 496,446.96 acres of land, and was afterwards surveyed in 1860, which survey was approved by the surveyor general of New Mexico.

The petition was presented to the territorial deputation, approved by that body on the 23d of March, 1835, and the grant made as asked for with the provision, "that persons who owned no land were to be allowed the same privilege of settling upon the grant as those who petitioned for it, and that 'the pasture and watering places are free to all.'"

On the 24th of March, 1835, the acting governor and political chief of the territory approved the action of the territorial deputation, and directed the constitutional justice of El Bado to place the parties in possession of the lands prayed for. This was done on the 6th of April, 1835.

The heirship or legal succession of the parties to the original grantees is alleged, and that the complainants "are now the true and real owners of undivided interests in said land, the separate interest therein of each being of the full value of not less than ten thousand dollars." The total value of the land is two million dollars.

The treaty and protocol of Guadalupe Hidalgo are invoked, and it is alleged that the surveyor general of New Mexico, under the provisions of the act of Congress of July 22, 1854, 10 Stat. 308, c. 103, and acting under the instructions of the Secretary of the Interior and Commissioner of the General Land Office, gave notice to parties claiming grants from Mexico to present their claims, and thereupon Francisco Lopez, Henry Connelly and Hilario Gonzalez, on behalf of themselves and a large number of citizens of the United States, residents of San Miguel County, presented their petition claiming the Las Vegas grant. The surveyor general investigated the claim, found, and reported its validity. His report was approved by Congress and the grant confirmed, "thereby confirming in and to the original grantees named and designated in said Las Vegas grant, their heirs and assigns, their absolute right and title to all of the lands embraced within the aforesaid boundaries and limits, free of all right, title, claim or control upon the part of the United States."

It is the duty of the Commissioner of the General Land Office to issue patents in "all such confirmed private land grants to the grantees named in the original grant, their heirs or assigns,

and in the discharge and performance of his duty therein he
has no judicial or discretionary powers, but acts ministerially
alone in the issuing of such patents."

It is further alleged in the bill that—

"December 17, 1898, upon a petition filed in the Interior De-
partment of the United States, praying that a patent be ordered
to be issued to the town of Las Vegas to all the land included
in said Las Vegas grant, the Honorable Thomas Ryan, the then
acting Secretary of the Interior Department, addressed a letter
to the Commissioner of the General Land Office, wherein and
whereby the said Interior Department ordered and directed the
honorable Commissioner of the General Land Office to issue a
patent to said lands to the town of Las Vegas, which order of
the Interior Department now remains and continues in full
force and effect, not having been set aside, vacated or omitted.

"Said plaintiffs are informed and believe, and upon their in-
formation and belief they charge the fact to be, that at the date
of the making of said Las Vegas grant, as aforesaid, there was
no place of collection of people having any legal existence under
the laws, customs or usages of the Republic of Mexico or the
Territory of New Mexico known or designated as the town of
Las Vegas, nor was there any town by name of Las Vegas on said
grant or elsewhere at that time which under the laws in force
at that time in the Territory of New Mexico had any legal or
corporate existence or which under or by virtue of any law,
custom or usage in force in New Mexico could take or acquire
title to lands.

"And said plaintiffs allege and charge further that said land
grant was not made to any town by name of Las Vegas or by
any other name; that the town of Las Vegas nor any other
town ever petitioned the surveyor general of New Mexico to
investigate the nature, character, extent or validity of said grant,
and that the only petition ever preferred to any surveyor gen-
eral for such an investigation touching said grant was preferred
by individuals representing the original grantees, Juan Dios
Maese et al., their heirs and assigns, the same hereinbefore re-
ferred to. They aver further that said surveyor general reported
that said grant was made in due form to Juan Dios Maese and

his associates, and was to them a valid grant, and plaintiffs aver that said grant was duly and legally confirmed by Congress to the original grantees, the said Juan Diós Maese and his associates, and that it was not confirmed to a town by the name of Las Vegas or to any other town. Said plaintiffs further show that they are informed and believe, and upon their information and belief they charge the fact to be, that there was not on December 17, 1898, any town by name of Las Vegas anywhere in the United States having any legal or corporate existence or any defined boundaries, or that could take or acquire title, either equitable or legal, to any lands whatsoever; and, further, that there was not at the time of the cession of the country included in the Territory of New Mexico to the United States by the Republic of Mexico, or at the time of the confirmation by Congress of the United States of said Las Vegas grant, any such town having any legal or corporate existence or having any defined boundaries, or any place by that name capable in the law of acquiring, having or holding title, either legal or equitable, to the lands included within the Las Vegas grant or any other real estate."

It is further alleged that such patent if issued will be a cloud upon the title of plaintiffs and that they have presented their claim to said grant and have requested a patent to be issued to the heirs and assigns of the original grantees, and that their request has been ignored, " and said Commissioner of the General Land Office is now about to issue the patent to said grant to a nonentity called the town of Las Vegas, in violation of law and in violation of the rights of plaintiffs and to their great and irreparable injury, and will do so unless restrained from so doing by this court."

The demurrer to the bill was general, charging want of equity, no jurisdiction of the court over the subject-matter, and a defect of parties.

The other facts stated in the opinion are taken from H. Ex. Doc. 14, 30th Cong., p. 36, quoted in the brief of counsel for appellants.

*Mr. Fred. Beall* and *Mr. H. C. Burnett* for appellants.

*Mr. Assistant Attorney General Van Devanter* for appellees.

Mr. Justice McKenna, after making the above statement, delivered the opinion of the court.

The first and second grounds of demurrer are substantially the same, or depend upon the same arguments. Of the second ground the courts below took different views, the Supreme Court holding that the town of Las Vegas was not and the Court of Appeals holding that the town was a necessary party.

As stated in the bill, the act of July 22, 1854, in execution of the treaty of Guadalupe Hidalgo, required the surveyor general of New Mexico, under the instruction of the Secretary of the Interior, to investigate and report upon the validity of grants of land from the Mexican government. On September 11, 1855, a petition was presented to the surveyor general for the examination of the grant of Juan de Dios Maese et al., which stated that it was presented by "Francisco Lopez and Henry Connelly and Hilario Gonzales, on behalf of themselves and a large number of citizens of the United States, residents of the town of Las Vegas and its vicinity, in the county of San Miguel, Territory of New Mexico, represent to your honor that they, and the citizens they represent, are the claimants and legal owners of a certain tract of land lying and being situate in the county of San Miguel, in the Territory of New Mexico."

It also stated the fact of a grant, the boundaries of the grant, and concluded as follows:

"The said claimants cannot show the quantity of land embraced in said grant, except as the same are set forth in the boundaries of said grant, nor can they furnish a plat of survey of said grant, as no survey of said land has ever been executed.

"Your petitioners, the claimants, are also informed and believe that Thomas Cabeza de Baca, for himself and others, are claimants also for the lands embraced in said grant and now claimed by your petitioners. Your petitioners pray that their claim and title to said lands be examined as required by law,

and that said grant be confirmed to them; and, as in duty bound will ever pray," etc.

The surveyor general made report of the claim, stating—

" The grant made to Juan de Dios Maese and others is not contested on the ground of any want of formality in the proceedings, but as far as the documentary evidence shows is made in strict conformity with the laws and usages of the country at the time.

" Testimony is introduced to show that the heirs of Baca protested in 1837 against the occupancy of the land by the claimants under the latter grant, and that they went upon the land knowing the existence of a prior grant, but as these matters are not deemed to be pertinent to the case so far as this office is concerned, it is not necessary to comment upon them.

" It is firmly believed that the land embraced in either of the two grants is lawfully separated from the public domain and entirely beyond the disposal of the general government, and that in the absence of the one the other would be a good and valid grant; but as this office has no power to decide between conflicting parties, they are referred to the proper tribunals of the country for the adjudication of their respective claims, and the case is hereby respectfully referred to Congress through the proper channel for its action in the premises."

The claims and thirty-two others which the surveyor general had investigated were submitted to Congress with his report thereon. The claims were designated by numerals from one to thirty-eight, number twenty being the " town of Las Vegas and Thomas Baca et al." H. Ex. Doc. 14, pp. 42, 45.

The claims were confirmed by the act of June 21, 1860. 12 Stat. 71–2. Section 6 of the act is as follows:

"And be it further enacted, That it shall be lawful for the heirs of Luis Maria Baca, who make claim to the said tract of land as is claimed by the town of Las Vegas, to select instead of the land claimed by them, an equal quantity of vacant land, not mineral, in the Territory of New Mexico, to be located by them in square bodies, not exceeding five in number. And it shall be the duty of the surveyor general of New Mexico to make survey and location of the lands so selected by said heirs

of Baca when thereunto required by them : Provided, however, That the right hereby granted to said heirs of Baca shall continue in force during three years from the passage of this act, and no longer." Approved, June 21, 1860. 12 Stat. 71–2.

Notice of the confirmation was sent by the Land Office to the surveyor general of New Mexico, and his attention was particularly directed to the sixth section of the act of Congress as follows :

"In this connection I have to draw your special attention to the sixth section of said act of June 21, 1860. . . . This law gives the land to the Vegas town claim, and allows the Baca heirs to take an equal quantity of vacant land, not mineral, in New Mexico, to be located by them in square bodies not exceeding five in number. To give this law timely effect you will give priority, in surveying private land claims, to this claim, particularly as it is in the vicinity—about four miles from the outside of the public surveys. You will proceed to have the exteriors of the Las Vegas town claim properly run and connected with the line of the public surveys. The exact area of the Las Vegas town tract having been thus ascertained, the right will accrue to the Baca claimant to locate a quantity equal to the area of the town tract elsewhere in New Mexico as vacant land, not mineral, in square bodies not exceeding five in number."

The grant was surveyed and a plat was made showing its area to be 496,446.96 acres. A certificate was issued to the Baca heirs for a like quantity of land, which entitled them to locate, and they did afterwards locate that quantity, and the location was sustained by this court. *Shaw* v. *Kellogg*, 170 U. S. 317.

On May 4, 1861, the surveyor general reported his action to the General Land Office, and transmitted the survey, field notes and plat. The papers were received and filed in the Land Office and the grant was treated as confirmed for 496,446.96 acres. In the reports of the General Land Office, subsequently made, the tract was named "town of Las Vegas," and the claimants the "inhabitants of the town."

On March 3, 1869, Congress passed an act which provided for the issue of patents for private land claims in New Mexico

which had theretofore been confirmed by Congress. Section 2 of the act is as follows:

"And be it further enacted, That the Commissioner of the General Land Office shall, without unreasonable delay, cause the lands embraced in said several claims to be surveyed and platted, at the proper expense of the claimants thereof, and upon the filing of said surveys and plats in his office he shall issue patents for said land in said Territory which have heretofore been confirmed by acts of Congress and surveyed, and plats of such survey filed in his office as aforesaid, but for which no patents have heretofore been issued." 15 Stat. 342, c. 152.

It is stated by counsel for appellants that prior to the act of March 3, 1869, the General Land Office was without authority to issue a patent for the lands in controversy. See also *Shaw* v. *Kellogg*, 170 U. S. 342. That act therefore is the sole authority to the General Land Office to issue the patent, and it would seem not to admit of controversy that the patent must issue to the confirmee of Congress. We think that the town of Las Vegas was that confirmee, and this conclusion relieves us from considering some of the interesting questions discussed by counsel.

The grant originally was as much to a community as to individuals, and a town was contemplated. The decree of the governor directed the selection of "a site for a town to be built by the inhabitants," and the constitutional justice, in executing the decree, informed those to whom he made "the distribution" of the land "that the water and pasture were free to all, and that the joint labor should be done by themselves without any dispute, and that the wall surrounding the town marked out should be made by them all, which, being done, that they notify the justice, in order that he may mark out to each one equally the portion he is entitled to." A town was started and grew and had attained substantial proportions at the time the confirmatory act was passed.

The petition of the surveyor general of New Mexico describes the petitioners as "residents of the town of Las Vegas and its vicinity," and he manifestly regarded it a claim on behalf of the town, stated it from that standpoint and reported it to Congress

as a claim by the town of Las Vegas. The claim was confirmed by reference to the report, and the town was especially designated the claimant in section 6 of the confirmatory act. That it received confirmation at all may be because it was a claim by a town. Its legality might have been questioned. The claimants in their petition stated that their claim was disputed by Thomas Cabeza de Baca, and reporting on that dispute the surveyor general said that testimony was introduced to show that the heirs of Baca protested in 1837 against the occupancy of the land by the claimants under the grant to Juan de Dios Maese, and that the claimants " went upon the land, knowing the existence of a prior grant " —the Baca grant. The surveyor general, however, did not assume to decide the dispute between the parties, but referred it to " the proper tribunals of the country " and to Congress. Congress accommodated the dispute by a magnificent donation of lands to the heirs of Baca, and confirmed the original land to the town; and we can easily see that Congress might have exercised its bounty to adjust a controversy to which a town was a party, when, if the contestants were individuals, they would have been remitted to the courts to litigate their rights and priorities. But however this may be, we cannot assume that Congress approved the report of the surveyor general unadvisedly, used the name of the town unadvisedly, or intended primarily some other confirmee.

This interpretation of the act of Congress cannot be changed even if Las Vegas had or has " no legal or corporate existence." If the designated confirmee cannot take, another cannot be substituted in its stead. Nor do we think the capacity of the town to take a patent is open to dispute in the Land Office. Of that capacity Congress was satisfied, and it is not for the Land Department to conceive and urge doubts about it raised upon disputable legal propositions. The town and its inhabitants were certainly substantial entities in fact, and were recognized by Congress as having rights, and directed such rights to be authenticated by a patent of the United States. It is the duty of the Land Office to issue that patent, to give the town and its inhabitants the benefit of that authentication, and to remit all controversies about it to other tribunals and proceedings. It

will be observed from this view that the question in the case is narrower than appellants conceive it. It is not what rights they had before confirmation of the grant nor what rights they may assert under or against the patent, but what Congress has done and what it has directed the Land Department to do. It is strictly this and nothing more, and on this only we express an opinion.

*Decree affirmed.*