[L. A. No. 1952.  Department Two.—January 23, 1908.]

CITY OF LOS ANGELES, Respondent, v. LOS ANGELES FARMING AND MILLING COMPANY, Appellant.

Action to Determine Water-Rights—Submission upon Stipulated Facts—Additional Findings—Support of Judgment—Harmless Error.—Where an action to determine water-rights is submitted upon stipulated facts showing that the plaintiff is entitled to judgment, the making of additional findings by the court is unnecessary,

and if it be erroneous, the error is harmless, where the additional findings do not materially change the stipulated facts.

ID.—RIGHTS OF LOS ANGELES IN RIVER AS SUCCESSOR OF PUEBLO—RIPARIAN RIGHTS SUBORDINATE.—The rights of the city of Los Angeles in the Los Angeles River for the use of its inhabitants, as successor of the old pueblo, is paramount in the whole body of the stream; and all rights of riparian owners on that river, are subordinate to the rights of the city therein.

ID.—CONFIRMATION AND PATENT OF PUEBLO "LAND"—WATER-RIGHTS NOT BARRED—PART OF "LAND"—LAW OF LOCALITY.—The obtaining by the city of Los Angeles, which was incorporated in 1850, of a confirmation and patent for the pueblo land, under the act of Congress of March 3, 1851, "to ascertain and settle private land claims in California," without any mention of "water-rights" in the proceedings, does not establish an adjudication barring the water-rights of the city in the Los Angeles River as the successor of the pueblo whose rights therein were part of the "land" by the law of the locality.

ID.—CONSTRUCTION OF ACT OF CONGRESS—"LAND" ONLY CONTEMPLATED.—The act of Congress of March 3, 1851, was intended to segregate private from public "land," no word being used therein to designate property other than "land." No claimant of "land" thereunder was required to set up in the petition to the commissioners any claim to "water-rights," riparian or otherwise, but the claimant was entitled, under the confirmation and patent, to everything embraced in the word "land" used therein, by the general law applicable to the locality of the land, which may be essentially different in different localities.

ID.—QUESTION UNDECIDED AS TO EXTENT OF PARAMOUNT RIGHT OF CITY.—The decision made as to the existence of the paramount right of the city and its inhabitants over the rights of a riparian proprietor on the Los Angeles River, herein involved and determined as against the adverse claim of the riparian owner to the contrary, would be no authority in a case which might hereafter arise, where the question would be as to the extent of plaintiff's prior and paramount right.

ID.—JUDGMENT QUIETING TITLE—INJUNCTION—PRAYER FOR GENERAL RELIEF—APPELLANT NOT PREJUDICED.—When the judgment quiets the title of the city as against the adverse claim of the riparian owners, and the facts alleged warrant an injunction not specifically prayed for, it may be granted under the general prayer for relief; and where it merely restrains the defendant "from claiming or asserting any right to the water, except in subordination and subject to the paramount right of the plaintiff," it merely accords with the judgment, and cannot be prejudicial to the appellant.

APPEAL from a judgment of the superior court of Los Angeles County, and from orders finding facts in addition to

stipulated facts, and denying a motion to recite the findings, to correct the conclusions of law, and to enter a different judgment for defendant on the stipulated facts. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

R. M. Widney, for Appellant.

W. B. Mathews, City Attorney, and Leslie R. Hewitt, successor, for Respondent.

McFARLAND, J.—The plaintiff is a municipal corporation. Its corporate territory is situated on the Los Angeles River, an unnavigable stream which rises in the San Fernando Valley several miles above and northerly of the city and flows southerly until it reaches the northern corporate boundaries of the city. The defendant is the owner in fee of land on and riparian to said river and situated about ten miles above the city. The plaintiff claims, as successor of a Spanish and Mexican pueblo, the prior and paramount ownership of the use of the water of the river from its source to the city and from the surface to bed-rock, so far as the same may be necessary to give an adequate supply of water for the use of its inhabitants, and for municipal and public uses and purposes of plaintiff. Defendant denies that plaintiff has any such asserted ownership and claims that as owner in fee of the said land, and as part and parcel thereof, it has the riparian right to the use of the water of the river as it flows through its land. This action was brought to quiet plaintiff's title and ownership of the use of said water as above stated, and to have it adjudicated that any right which the defendant may have to the use of the water is subordinate and subject to plaintiff's said ownership. The case was tried without a jury, and judgment was rendered for plaintiff as prayed for, and defendant appeals from the judgment. It also appealed from several orders denying certain motions made by defendant; but these appeals do not present any question substantially different from those presented by the appeal from the judgment; and if the judgment should be affirmed, so also should be the orders.

The case was submitted on a stipulated statement of facts. The court, however, made a few additional findings, and appellant contends that it was error to make these findings, and that for this reason the judgment should be reversed. The making of these additional findings was unnecessary, and perhaps improper and erroneous; but it does not follow that for this reason the judgment should be reversed. So far as the findings may be considered as findings of fact they do not materially change the facts as stipulated; and if the stipulated facts warrant a judgment it should stand. (*Higgins* v. *San Diego Sav. Bank,* 120 Cal. 184, [61 Pac. 943]; *McMenomy* v. *White,* 115 Cal. 339, [47 Pac. 109].)

It is not necessary to recite here in any great detail the facts as stipulated. Indeed, the situation of the city of Los Angeles with respect to the Los Angeles River, and its claim to the use of the water of the river, have been quite fully stated in former opinions of this court and are familiar facts. (*Vernon Irr. Co.* v. *Los Angeles,* 106 Cal. 237, [39 Pac. 762]; *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597, [57 Pac. 585].) For the purposes of this appeal it is necessary to state only the following facts: In the year 1781, under Spanish rule, the pueblo of Nuestra Señora Reina de Los Angeles was established, embracing four square leagues of land which is included in and is part of the present city of Los Angeles. This pueblo continued in existence under Spanish and Mexican dominion until after the acquisition of California by the United States in February, 1848, under the treaty of Guadalupe Hidalgo. It is stipulated that "Under the laws of the Kingdom of Spain, said pueblo upon its foundation, by virtue of a grant under such laws, had the paramount right, claimed by the plaintiff in the present case, to use all the water of the river, and such paramount right continued to exist under that government, and the Mexican government, until the acquisition of California by the United States."

The plaintiff was first organized as a municipal corporation on April 4, 1850, by an act of the legislature of California and, with various changes in its charter, has continuously been a municipal corporation ever since. On October 26, 1852, it filed a petition with the board of land commissioners created by the well-known act of Congress of March 3, 1851 (9 Stats. 631), entitled, "An Act to ascertain and settle the

private land claims in the state of California.'' In this proceeding it claimed title in fee to a ''tract of land'' known as the ''pueblo lands'' of the pueblo of Los Angeles founded upon the Spanish grant of 1781, and alleged to contain sixteen square leagues. The commissioners rendered a decision in which they held that the city was entitled to said pueblo lands, but that they embraced only four square leagues, and the claim of the city to the other part of the alleged sixteen leagues was rejected. In accordance with this decision a patent of the United States was afterwards, on August 9, 1866, issued to plaintiff for the four square leagues. The land owned by appellant, the Los Angeles Farming and Milling Company, was granted by the Mexican government to the predecessors of appellant in 1846, and was presented to the said board of land commissioners, and after proper proceedings regularly taken a patent of the United States was on June 8, 1873, duly issued to said predecessors for a tract of land through a part of which the Los Angeles River flows, so that the land is riparian to said river. The patent does not contain on its face any reservation or exception.

Appellant contends that the above two proceedings before the land commissioners and the patents which followed, constitute final adjudications: 1. That the city had only title to four square leagues of land with such appurtenances as regularly belonged to the ownership in fee of lands, but had not any ownership in the use of the water above the limits of the land granted, such as is alleged to have belonged to the old pueblo; and  2. That the patent to appellant's predecessors finally adjudicated that they were the riparian owners of the use of the waters of the river running through the land, as part and parcel of their estate. This contention is not maintainable. The act of March 3d was intended to segregate private from public lands; no word designating property is used in it other than ''land.'' Appellant contends that the city, in its petition to the commissioners, should have set up its claim to the pueblo claim to the water; but the act does not contemplate presentation of a claim to anything but ''land.'' The city was no more called upon to set up its water-rights as successors to the pueblo than were appellant's predecessors called upon to set up the riparian rights of the owners of the land claimed by them. Of course, the word

"land" as a conveyance, carried every kind of property, right, and appurtenance, which is legally embraced in that word; but what rights go to a patentee of land depend, not upon any supposed adjudication contained in the patent, but upon the general law of the state where the land is situated; and those rights may be essentially different in different localities. For instance, if a piece of patented land is in a state or territory where the English common law doctrine of riparian ownership prevails to the full extent, the patentee of the land, if it is situated on a natural watercourse, would have the right to have the water of the stream flow down to his land without any material diminution in quantity, and could have the upper riparian proprietor enjoined from diverting the water in any way or for any purpose which would materially diminish the flow; but such right would not accrue to a patentee of land in an arid region of a western state where irrigation is necessary to successful agriculture and where the original rule as to riparian ownership has been modified by the state law, so as to allow a riparian proprietor to divert a reasonable amount of the water of a stream and use it to irrigate his riparian land although a material part of the water would be absorbed and prevented from flowing down to the lower proprietor. It is quite clear that the rights which are embraced in the word "land" are determined by the law of the country where the land is situated. In *Hardin v. Jordan*, 140 U. S. 371, [11 Sup. Ct. 808, 838], the supreme court of the United States say: "In our judgment the grants of the government of land bounded on streams and other waters, without any reservation or restriction of terms, are to be construed as to their effect according to the law of the state in which the lands lie." The right of a riparian owner in fee of land to the use of natural water running through it is subordinate to any paramount right to the use of such water existing under the general law in some other person.

The only question in the case therefore is whether under the general law of the locality the old pueblo of Los Angeles, and the respondent herein, as its successor, had and have, as against appellant the prior and paramount ownership of the use of so much of the water of the Los Angeles River as is necessary for its inhabitants and for general municipal purposes; and this question need not be discussed as an original

one, for it has been answered in the affirmative by former
decisions of this court. In *Lux* v. *Haggin,* 69 Cal. 255, [4 Pac.
919, 10 Pac. 674], the whole subject of water-rights in Cali-
fornia, both before and after American dominion, was in-
volved, and extensively discussed. The law on the subject
under Spanish and Mexican rule was very fully considered.
As to pueblo rights the court says: ''The laws of Mexico
relating to *pueblos* conferred on the town authorities the
power of distributing, to the common lands and to its inhab-
itants, the waters of an unnavigable river on which the pueblo
was situated. It is not necessary to say that the property of
the nation in the river, as such, was transferred to the pueblo,
but it would seem that a species of right to the use of all its
waters necessary to supply the domestic wants of the *pobla-
dores,* the irrigable lands and the mills and manufactories
within the general limits, were vested in the pueblo authori-
ties, subject to the trust of distributing them for the benefit
of the settlers.'' It is further said: ''Each pueblo was *quasi*
a public corporation. By the scheme of the Mexican law
it was treated as an entity or person, having a right as such,
and by reason of its title to the four leagues of land, to the
use of the water of the river on which it is situated, while
as a political body, it was vested with power, by ordinance,
to provide for a distribution of the waters to those for whose
benefit the right and power were conferred.'' And it is further
said: ''From the foregoing it appears that the riparian
proprietor could not appropriate water in such manner as
should interfere with the common use or destiny which a
pueblo on the stream should have given to the water; and
*semble* that the pueblos had a preference or prior right to
consume the waters even as against an upper riparian pro-
prietor.'' In *Vernon Irrigation Co.* v. *City of Los Angeles,*
the present plaintiff was a defendant, and the rights of the
old pueblos and of the present city as its successor were di-
rectly involved. The opinion of the court delivered by the late
Justice Temple, then commissioner, contained an exhaustive
review of the Spanish and Mexican law on the subject. The
views expressed in *Lux* v. *Haggin* as to the rights of the
pueblo in the waters of the river are approved. The opinion
is very lengthy and we will quote only an expression or two
from it. It is said: ''Our courts have determined that the

successors of these pueblos hold the public lands in trust for the inhabitants and that the legislature can control the execution of the trust; and that the United States has, in accordance with the decisions confirmed the lands to the successors of the pueblos.'' And it is further said: ''I am satisfied with the conclusion reached in *Lux* v. *Haggin,* 69 Cal. 255, [4 Pac. 919, 10 Pac. 674], that pueblos had a right to the water which had been appropriated to the use of the inhabitants, similar to that which it had in the pueblo lands, and that the right of its successor, the city, to the water, for its inhabitants and for municipal purposes, is superior to the rights of plaintiff as a riparian owner.'' *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597, [57 Pac. 585], is another case in which the right of the old pueblo and the present plaintiff to the waters of the river was immediately involved. An exhaustive opinion is also written in this case by the chief justice, speaking for the court, and the conclusion reached in Vernon Irrigation Company is approved, the court saying: ''But the appellants go still further, and contend that when the land in controversy was granted to their predecessors there was no pueblo of Los Angeles, and consequently no pueblo right to which any of their rights could be subordinated. . . . This question, however, ought to be considered closed by the previous decisions of this court in the Vernon Irrigation Company case and others. All of the laws and public documents upon which its solution depends are within the judicial cognizance of the courts, and whether they were actually noticed or not in previous decisions they must be deemed to have been considered and allowed their due weight. The question is one of law, rather than of fact, and its decision in one case is a precedent in others.''

The foregoing decisions are determinative of the prior and paramount right of the pueblo, and of plaintiff as its successor, to the use of the water of the river necessary for its inhabitants and for ordinary municipal purposes. The questions as to what extent this right goes, a question somewhat considered in the Pomeroy case—that is, for the use of the inhabitants of what territory, and for what municipal purposes can the water be taken as against a riparian owner— does not arise and need not be considered in the case at bar. Appellant's case is presented in the record as resting upon the

proposition that neither the pueblo nor the plaintiff has or had any right whatever to use water of the river that is prior or paramount to appellant's right as a riparian proprietor; and the present decision would not be authority in a case, if any such case should ever arise, where the question would be as to the extent of plaintiff's prior and paramount right, and not as to the existence of that right to any extent.

The judgment not only quiets plaintiff's title, but also enjoins appellant from doing certain acts; and appellant contends that the injunction was erroneous because no injunction was prayed for in the complaint, and no facts are alleged which would support an injunction. So far as the prayer is concerned the general prayer for relief is sufficient, and the facts alleged warranted an injunction, so that this contention cannot be maintained. Moreover, the injunction is of very little importance and it cannot be prejudicial to appellant. It does not enjoin appellant from interfering with any particular amount of water, but merely restrains it "from claiming or asserting any right to the water, except in subordination and subject to the said paramount right of said plaintiff." This is merely in accord with the part of the judgment which quiets the title, and adds nothing of consequence to it.

The judgment and orders appealed from are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.

On the denial of the hearing in Bank, Beatty, C. J., filed the following opinion on February 21, 1908:

BEATTY, C. J.—In recording the order denying a rehearing of this cause I desire to protest against the citation of my opinion in *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, [57 Pac. 585], as authority for the affirmance of this judgment. It is true that the opinion of Justice Temple in that case, which was concurred in by a majority of the justices, furnished a precedent for the present decision, but that opinion, it will be seen by reference to page 647 of the report (124 Cal., [57 Pac. 604] ), was written for the express

purpose of overriding that portion of my opinion commencing on page 639, [57 Pac. 600], in which I expressly deny the rights here asserted and upheld. In my opinion the paramount right of Los Angeles to the waters of the Los Angeles River is limited to that part of the present city comprised in the four leagues (about 17,500 acres) constituting the original pueblo, and cannot be asserted for the satisfaction of the wants of the additional ten thousand four hundred acres added by the amended act of incorporation, or the territory since added and that may be hereafter added by the joint action of the municipal authorities and the inhabitants of the extensive unincorporated area adjoining the city.

But this is what is now decided to be the law: The city of Los Angeles, as it has been enlarged far beyond the limits of the old pueblo and as it may be indefinitely enlarged in the future, has a paramount right over all riparian proprietors above the city to the use of all the water necessary to the supply of its inhabitants. It may annex all the lands between it and the ocean, including a vast area not riparian to the Los Angeles River, and the inhabitants of this annexed territory immediately become invested with the paramount right to the water flowing in the tributaries of the river, whether above or below ground, notwithstanding they have been used for a hundred years by the grantees of Spain and Mexico, and their successors, of lands riparian to the stream. This is, I concede, the logical outcome of the decision of the court in *Los Angeles* v. *Pomeroy*, but it is a doctrine which I disclaimed in that case and for which neither *Lux* v. *Haggin*, 69 Cal. 255, [4 Pac. 919, 10 Pac. 674], nor *Vernon District* v. *Los Angeles*, 106 Cal. 237, [39 Pac. 762], is authority.