796 P.2d 1121

The **CITY OF LAS VEGAS, a New Mexico Municipal Corporation, Petitioner–Appellant/Cross–Appellee,**

**v.**

**The Honorable LaFel E. OMAN, District Judge Pro Tempore, Fifth Judicial District Court, Chaves County, Respondent.**

**State of New Mexico ex rel. S.E. Reynolds, State Engineer, Real Party in Interest/Appellee/Cross–Appellant.**

No. 11196.

Court of Appeals of New Mexico.

June 14, 1990.

Certiorari Denied July 24, 1990.

Sumner S. Koch, Paul L. Bloom, White, Koch, Kelly & McCarthy, P.A., Santa Fe, for petitioner-appellant/cross-appellee.

Eric Richard Biggs, Sp. Asst. Atty. Gen., Santa Fe, for real party in interest/appellee/cross-appellant.

Neil C. Stillinger, Peter B. Shoenfeld, Peter B. Shoenfeld, P.A., Santa Fe, for Amici Acequia Madre de Las Vegas, et al. and City of Santa Rosa.

## OPINION

MINZNER, Judge.

This case arises out of a general adjudication of water rights in the Roswell Artesian Basin, in the course of which the state of New Mexico (the state) seeks an adjudication of rights to water from the Gallinas River (the Gallinas). *See* NMSA 1978, § 72–4–17 (Repl.1985). The city of Las Vegas (the city) and the state appeal the denial of cross motions for partial summary judgment. Both parties filed applications for interlocutory appeal with this court, which were denied. The city then filed a petition for writ of superintending control in the supreme court, which remanded the case to this court for consideration as an interlocutory appeal.

The city moved for partial summary judgment on the basis that it has a water right "in and to the surface waters of the Gallinas River, * * * as is or may be necessary for the municipal purposes and uses of Las Vegas and its inhabitants, with a priority date of April 6, 1835[.]" The city relied on the New Mexico Supreme Court decision in *Cartwright v. Public Service Co. of New Mexico*, 66 N.M. 64, 343 P.2d 654 (1958) (*Cartwright I*).

The city claims a water right based on its predecessors' status as successor to a Spanish or Mexican town (pueblo) to which a land grant was made in pre-territorial days for the purpose of encouraging colonization. The city contends that when a pueblo received a colonization grant, it included a right to water that was paramount and superior to the rights of others when a dispute arose ("the pueblo water rights doctrine"); that *Cartwright I* recognized

the pueblo water rights doctrine; and that *Cartwright I* controls the issues on appeal.

In moving for partial summary judgment, the city relied on the principle that both the district court and this court are controlled by supreme court precedent, *see Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973), and the doctrines of stare decisis and res judicata. In effect, the city asked the district court to enter a ruling that would have limited the issues at trial to quantification of its right.

The state claimed "that the legal theories advanced by the city in its Motion for Summary Judgment are in error, and that res judicata or similar doctrines bar the city from asserting claims based on *Cartwright [I]*." The state's res judicata argument relied on a 1922 district court decree (the Gallinas Decree) in *The Acequia Madre de Las Vegas v. Gallinas Canal, Water Storage and Irrigation Company*, San Miguel County District Court No. 8142. The state's other arguments in effect asked the district court to enter a ruling that permitted trial of all issues relating to the existence of the city's right to water.

With respect to the city's appeal, we conclude that the city is not entitled to prevail on its claim of res judicata but that *Cartwright I* binds us, under the doctrines of stare decisis and the holding in *Alexander*, to recognize the pueblo water rights doctrine in New Mexico. Nevertheless, the district court may have to decide matters concerning that right not addressed in *Cartwright I*. Moreover, it is within the discretion of the district court to permit the parties to make a record upon which the pueblo water rights doctrine can be challenged in the supreme court. Finally, although *Cartwright I* recognized that the city's predecessors had succeeded to the right of a pueblo and could invoke the pueblo water rights doctrine, that part of the decision was partly a matter of law (adoption of the pueblo water rights doctrine and ruling on what must be shown to establish that a grant was made for purposes of colonization) and partly a matter of fact (did the evidence prove that the

city's predecessors in interest met those requirements). Therefore, for example, a party not bound by *Cartwright I* under the doctrines of res judicata or collateral estoppel could try to present evidence that the city's predecessors in interest had not met the requirements. With respect to the state's appeal, we conclude that the state's reliance on the Gallinas Decree is misplaced and that it does not preclude the city's claim in the present proceeding.

We first discuss the general background of both appeals and then discuss each appeal in turn. We affirm the district court's order denying both motions for partial summary judgment.

BACKGROUND.

The city was formed in 1970 by the consolidation of West Las Vegas, or "Old Town," and East Las Vegas, or "New Town." "Old Town" (town) lay west of the Gallinas and had been a municipal corporation since 1903, while "New Town" (old city), which lay east of the Gallinas, had been a municipal corporation since the 1890's. By 1970, New Town was called the City of Las Vegas, and the city formed in 1970 kept that name.

The Town of Las Vegas Land Grant was a community land grant confirmed by Congress to the Town of Las Vegas in 1860 on the basis of a grant by the Mexican government in 1835. *See Maese v. Herman*, 183 U.S. 572, 22 S.Ct. 91, 46 L.Ed. 335 (1902); *see also Cartwright I*, 66 N.M. at 78–9, 343 P.2d at 664. In 1903, the New Mexico territorial legislature created the Board of Trustees of the Town of Las Vegas Administering the Las Vegas Grant (the board), *see* NMSA 1978, Sections 49–6–1 through –14, and authorized the board to "conduct and transact all business pertaining to the management, control and administration of said land grant" pursuant to rules and regulations issued by the district court of San Miguel County. *See* § 49–6–8. The board is not considered a municipal corporation under New Mexico law. *See State v. Board of Trustees of Town of Las Vegas*, 28 N.M. 237, 210 P. 101 (1922). The parties agree that the board is a distinct legal entity from the city and its predecessors.

The town was the original settlement within the grant boundaries, and the old city developed around the railroad depot after 1879. The board was created to administer the land within the grant boundaries not reduced to private ownership at the time of the United States Supreme Court decision in *Maese*. *See* § 49–6–10. The state legislature provided a board of trustees to manage the remaining unowned land within the grant boundaries "for the best interests of the community for the benefit of which said grant was made." § 49–6–9.

The Gallinas flows through the Las Vegas Land Grant. On leaving the grant's southern border, the Gallinas continues for a short distance before it joins the much larger Pecos River. Rights to water from the Gallinas have been the subject of several proceedings during this century on which the parties rely. Professor G. Emlen Hall from the University of New Mexico School of Law, an expert witness for the state, summarized these proceedings in a 1986 document entitled *Bringing Water Law to the Gallinas River*, which was submitted by the state to the district court in response to the city's motion for summary judgment.

The first attempt to adjudicate rights to the flow of the Gallinas River that is relevant to this appeal produced the 1922 Gallinas Decree, on which the state's res judicata argument depends. The proceedings which led to the Gallinas Decree primarily involved the board; the town, but not the old city, was a named defendant.

In 1909, the board made Application 341 to the territorial engineer to appropriate the water of the Gallinas with an 1835 priority date. The territorial engineer rejected the claim and issued a permit with a priority date of 1909, subject to the rights of all persons having valid prior appropriations on the stream. In 1922, several water rights adjudications were consolidated in the district court proceeding that resulted in the Gallinas Decree. Both the board and the town were named defendants; there is no evidence in the record that the town ever claimed or requested water rights, but the board answered and claimed

a water right. The board was adjudicated a water right with a priority date of 1909, which thus was subject to the rights of prior appropriators.

The second attempt to adjudicate rights to the water of the Gallinas River that is relevant to this appeal began in 1920. The federal government attempted to adjudicate all surface rights to the Pecos River stream system in a case in federal court, *United States v. Hope Community Ditch Co.*, United States District Court No. 712 Equity. The suit began, as did the present suit, with the Carlsbad Irrigation District, but it eventually included claimants to the Gallinas River. In that litigation, the Las Vegas Land and Water Company (LVLWC), the board's assignee, asserted the board's right as applied for in Application 341, and also asserted a right with an 1835 priority date. Professor Hall concludes the LVLWC went into receivership and eventually disappeared, but its claim seems to have been adjudicated. A final decree (the Hope Decree) was entered in this suit in 1933. Pursuant to that decree, the New Mexico Power Company, which distributed water to both municipal corporations that are the city's predecessors, was awarded the right to take 2,600 acre feet per year with a priority date of 1881. The decree also recognized a right in the LVLWC and others to the "right ... defined in and limited by Application Number 341 in the office of the State Engineer[.]" In 1935, the federal court relinquished jurisdiction over the Hope Decree.

Some time after the Hope Decree was entered, the Public Service Company (PNM) succeeded the New Mexico Power Company, which then became a defendant in the state's attempt to enforce the Hope Decree. In a 1954 state district court proceeding, *State of New Mexico ex rel. John R. Erickson, State Engineer v. Public Service Co. of New Mexico*, San Miguel County District Court No. 15,219 (*Erickson*), the state sought to enjoin PNM from taking water out of the priority adjudicated in the Hope Decree. PNM answered and raised a number of defenses; one paragraph of its answer stated that the town and the old city had a right to water with a priority date of 1835. The district court denied the state's request for a temporary injunction and dismissed the complaint. No appeal was taken. In the present case, the city relies on *Erickson* in contending that it is entitled to partial summary judgment on the basis of res judicata.

In 1955, the litigation that led to *Cartwright I* began. In that litigation, a number of users of Gallinas water sought to limit PNM to the water right awarded to the New Mexico Power Company by the Hope Decree. At least some of the plaintiffs sought damages, as well as injunctive relief. The town intervened. PNM and the town asserted as an affirmative defense that PNM had taken no more water than that to which it was entitled under the pueblo water rights doctrine. The district court denied the plaintiffs both an injunction and damages, and found and concluded that the town and the old city had a right, with an 1835 priority date, to use as much of the water as was necessary for their inhabitants.

On appeal, the *Cartwright I* plaintiffs argued that the district court erred in several ways. From the briefs filed with the supreme court, it is clear that the plaintiffs first asked the supreme court to hold that PNM was bound by the Hope Decree on the basis of res judicata but argued, alternatively, that the pueblo water rights doctrine did not apply to the Las Vegas Land Grant. The *Cartwright I* plaintiffs asked the court to hold that the Las Vegas Land Grant actually derived from an American title, either because congressional recognition had been the result of a settlement between competing claimants, or because the Treaty of Guadalupe Hidalgo did not apply to the territory acquired by the annexation of Texas and the town was part of that territory. The plaintiffs also argued that PNM and the town were estopped from asserting the pueblo water rights doctrine by their course of conduct before and during the Hope Decree. Finally, the plaintiffs argued that New Mexico did not recognize the pueblo water rights doctrine. The state filed an amicus brief, as did others, arguing that Spanish and Mexican

water law did not encompass a pueblo water rights doctrine, the California cases to the contrary were based on erroneous assumptions, and such a doctrine was inconsistent with the New Mexico rule of prior appropriation.

On appeal, the majority opinion addressed the issues framed by the plaintiffs under three headings: (1) whether the Hope Decree was res judicata as to PNM and the town; (2) whether the district court erred in finding that a conflicting claim to the Las Vegas Land Grant, and thus to its water right, was inferior to the rights of PNM and the town; and (3) whether New Mexico was entitled to apply the pueblo water rights doctrine recognized in California.

First, the supreme court held that the town was not a party to the Hope Decree and that the decree did not adjudicate any water right for it. The supreme court construed the Hope Decree as not affecting any rights not expressly determined. Because the town's right was not expressly determined by the Hope Decree, the supreme court concluded the town was not bound by it. *Cartwright I*, 66 N.M. at 76, 343 P.2d at 662.

Second, the *Cartwright I* majority addressed the conflicting claims of Luis Cabeza de Baca to the Las Vegas Land Grant, by virtue of a grant initiated in 1821. The court noted that the United States Supreme Court in *Maese* had described congressional confirmation as resolving the dispute between Cabeza de Baca's heirs and the town in favor of the latter. *Cartwright I*, 66 N.M. at 79, 343 P.2d at 664. The court reasoned that congressional confirmation of the grant conclusively established a valid Mexican title.

Third, the supreme court held that the pueblo water rights doctrine recognized in California was applicable in New Mexico, because the reasoning behind California's decision to uphold and enforce the pueblo water rights doctrine also applied here. *Id.* at 85–86, 343 P.2d at 668–69. In other words, Mexican and Spanish law governing land grants was applicable in New Mexico; that law included the right of a pueblo to

water; and, in ratifying a claim to the land granted to a pueblo, Congress also ratified the water rights associated with a pueblo land grant. The court was not persuaded that the pueblo water rights doctrine was inconsistent with the doctrine of prior appropriation and quoted extensively from treatises in supporting its holding. *Id.* at 80–84, 343 P.2d at 665–68.

The treatises quoted by the court indicate that a pueblo had a right to the water flowing through it for municipal purposes and for supplying its inhabitants. That right was paramount and superior to the rights of others when a dispute arose; a pueblo's claim to use water increased as its needs increased.

At the end of the majority opinion, the supreme court states: "We think the trial court was correct in sustaining the claim of defendant and intervenor under the Pueblo Rights doctrine." *Id.* at 86, 343 P.2d at 669. This statement, together with the court's prior statement that the town had been granted a water right by the Mexican government in 1835, *Cartwright I,* 66 N.M. at 80, 343 P.2d at 665, provides the basis for the city's argument that it was entitled to partial summary judgment on the basis of either stare decisis or *Alexander.*

Shortly after the decision in *Cartwright I* became final, the plaintiffs filed another suit against PNM. This time they contended that the pueblo water right at issue in *Cartwright I* actually belonged to the board rather than the town and the old city. The suit was dismissed on the basis that *Cartwright I* was res judicata between the parties. That decision was sustained on appeal. *See Cartwright v. Public Serv. Co. of N.M.,* 68 N.M. 418, 362 P.2d 796 (1961) (*Cartwright II*).

In 1960, the state engineer petitioned the federal district court for a writ of assistance (the writ of assistance case) to enforce the allotment made to the New Mexico Company by the Hope Decree. In response, PNM relied on the supreme court's decision in *Cartwright I,* and Judge Hatch denied the writ. He ruled that the federal court had relinquished jurisdiction of the proceedings that led to the Hope Decree to

the state, but his opinion also contains the following language: "it would seem most reasonable to suppose that [*Cartwright I*] should be mandatory law and binding upon the officials of the State of New Mexico." The city also relies on the writ of assistance case in contending that it was entitled to summary judgment on the basis of res judicata.

The present proceeding began with the state's supplemental complaint in 1978. The state asked the state district court to allow additional parties to be named "from time to time as it appears necessary for the determination and adjudication of the water rights of the Pecos River Stream System[.]" In 1985, the state served a copy of the supplemental complaint on the city requiring it to describe what right, if any, it claimed to the use of waters of the Pecos River stream system. The state also served an offer of judgment; pursuant to that offer, the state indicated that it was willing to recognize a surface water right as adjudicated in the Hope Decree.

After a pretrial conference, the district court ordered the state "to complete the hydrographic survey of surface water uses in the drainage of the Gallinas River and its tributaries above its confluence with the Pecos River." *See* NMSA 1978, § 72–4–13 (Repl.1985). Thereafter, the state "should insofar as possible join known claimants to the right to use surface waters of the Gallinas River drainage to the Pecos River adjudication, and proceed to offer judgment against itself and in favor of such claimants[.]" The order further provided that:

> Upon joinder of water right claimants ..., the state shall provide notice of said claimants' rights to appear and be heard concerning the pueblo doctrine water right claims of the City of Las Vegas and upon any independent claim they or any one of them may make to be the owner of a separate pueblo doctrine water right.

Finally, the order provided that upon completion of the notice procedure,

> the Court will conduct one unified proceeding to determine and resolve the existence, parameters, and ownership of the pueblo doctrine water right claimed by the City of Las Vegas, and of all other such pueblo doctrine water right claims in the Pecos River stream system. The city and any other pueblo doctrine water right claimant will have the opportunity to challenge the standing of any other water right claimant to object to the city's claimed pueblo doctrine rights or other such claims. Other water right claimants will have the opportunity to challenge the pueblo doctrine water right claims of the city and any other pueblo doctrine water right claimants. The decision of the Court on the claims asserted and contested in this proceeding will be final and binding for all purposes, without further *inter se* procedures.

At the motion for summary judgment hearing, the district court announced it intended to hold "one hearing on these claims ... rather than have the state litigate with the city on the issue of pueblo rights doctrine and then have another hearing for all those opposing the city's claims of rights based on this same doctrine." At the present time, however, the record indicates the state and the city are the only parties to the proceedings.

THE CITY'S APPEAL.

In support of its right to partial summary judgment, the city argues that when the *Cartwright I* court sustained the claim to a pueblo water right in and to the Gallinas River stream system within and above the town site, it established (a) a precedent that the district court was required to apply, *see Alexander v. Delgado;* or (b) a rule of property that controls this case under the doctrine of stare decisis, because the city has continued to rely on the pueblo water right both for its continuing diversion and municipal use of Gallinas River stream system waters and in connection with its ongoing water supply planning. *See In re Applications of Langenegger,* 64 N.M. 218, 326 P.2d 1098 (1958); *State ex rel. Bliss v. Dority,* 55 N.M. 12, 225 P.2d 1007 (1950). The city also argues that both *Erickson* and the writ of assistance case (c) involved the same cause of action as the present proceeding, and under the doctrine of res

432

judicata, preclude the state's claim in the present proceeding; or (d) decided the ultimate issues relevant in determining the existence of the city's water right, and thus, under the doctrine of collateral estoppel preclude relitigation of those issues in the present proceeding. We first address the city's arguments based on res judicata and collateral estoppel, (c) and (d) above, then the city's argument based on *Alexander* and stare decisis, (a) and (b) above. Finally, we address the issue of whether the district court is entitled to receive evidence on the historical accuracy of the pueblo water rights doctrine.

### 1. *Erickson and the Writ of Assistance Case.*

■ "Res judicata applies when four elements are met: (1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) same cause of action, and (4) same subject matter." *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), *overruled on other grounds, Universal Life Church v. Coxon*, 105 N.M. 57, 728 P.2d 467 (1986). In addition, there must have been a final decision on the merits, and the parties must have had a full and fair opportunity to litigate the issues arising out of the claim. *Slide-a-Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces*, 105 N.M. 433, 733 P.2d 1316 (1987).

■ "Collateral estoppel, like res judicata, is a judicial economy measure to prevent litigation of an issue already judicially decided." *International Paper Co. v. Farrar*, 102 N.M. 739, 741, 700 P.2d 642, 644 (1985). It applies where the second lawsuit is upon a different cause of action. When it applies, the judgment in the prior action precludes relitigation of issues actually litigated and necessary to the outcome of the first suit. *Id.; see also Edwards v. First Fed. Sav. & Loan Ass'n*, 102 N.M. 396, 696 P.2d 484 (Ct.App.1985).

■ On appeal, the city seeks to apply both doctrines against the state. The city claims that the victories of its privies in the writ of assistance case and *Erickson* pre-clude the state's challenge here. (The city cannot rely on either *Cartwright I* or *II* as res judicata against the state because the state was not a party. *See* 1 *Restatement (Second) of Judgments* § 39, comment c (1982) (amicus curiae not bound by res judicata)). However, in moving for summary judgment, the city relied only on the doctrines of stare decisis and res judicata. The transcript of the record shows that the district court was asked to rule, and did rule, only on the questions of whether *Cartwright I* controlled as a matter of precedent and whether the state's attempt to require the city to prove the existence of its right to water was precluded by the doctrine of res judicata. Thus, the city's appellate issues based on the doctrine of collateral estoppel are not before us. *See* SCRA 1986, 12–216(A). With respect to the two cases on which the city relies, we assume that the parties were either the same as or in privity with the parties in this case and that there is the requisite identity of capacity or character. We also assume that the actions involve the same subject matter and the same cause of action.

■ Nevertheless, a judgment for a defendant does not bar another action by the plaintiff "[w]hen the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties." 1 *Restatement (Second) of Judgments* § 20(1)(a) (1982). Dismissal is not a bar even if just one of the several alternative grounds for the dismissal would be an inadequate ground. *Id.*, comment e. Thus, even if in dismissing an action the district court states that defendant should prevail on the merits but offers as an alternative ground for dismissal its own lack of jurisdiction, the dismissal would not bar a subsequent action by plaintiff against the same defendant in a court having jurisdiction. *Id.*

This doctrine controls the result here. In the writ of assistance case, the federal court specifically stated that it had relinquished jurisdiction. In *Erickson*, the ground of dismissal is not expressed, but PNM's responsive pleading specifically claimed lack of jurisdiction of the subject

matter and failure to join indispensable parties. Since the district court did not state its grounds for dismissal except to note that PNM's "legal objections are well taken," we conclude it would be improper to give the decision in *Erickson* res judicata effect. The record indicates that lack of jurisdiction and lack of joinder of indispensable parties were alternative grounds for the decision. For these reasons, we conclude that the city was not entitled to prevail on its claim of res judicata.

### 2. Alexander, Stare Decisis, and Cartwright I.

■ Although the city cannot bind the state under *Cartwright I* on res judicata grounds, the law developed in *Cartwright I* is binding on both this court and the district court. *See Alexander v. Delgado*. Moreover, the doctrine of stare decisis presumes that a court will apply the rules of law previously announced by courts of the same jurisdiction to cases involving similar facts. *See* 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.402[1] (2d ed.1988); *see generally United States v. Maine*, 420 U.S. 515, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975) (sustaining special master's conclusion that prior cases, unless these were to be overruled, completely disposed of the states' claims of ownership; the Court noted that res judicata did not preclude the states from litigating the issues, because the states were not parties to the prior cases).

The doctrine of stare decisis has been described as "one of the foundations of our system of jurisprudence[.]" *State ex rel. Callaway v. Axtell*, 74 N.M. 339, 343, 393 P.2d 451, 454 (1964). In its motion in limine, the city offered the following description of the doctrine, with which we agree:

> Stare decisis presumes that a court will apply the rules of law previously announced by courts of the same jurisdiction to all factually similar cases, and ensures the necessary uniformity of the law and that similarly situated litigants are treated alike. Stare decisis also eases the work load of courts by preventing frequent reconsideration of settled questions and lends a degree of certainty and

stability to the law so that people may reasonably rely on the law in arranging their affairs.

As the city acknowledges, under the general principle of stare decisis, incorrect decisions may be overruled. *See id.* However, the city contends that *Cartwright I* established a "rule of property."

■ In referring to a "rule of property," the city notes that courts are reluctant to overrule even incorrect decisions under certain circumstances. Thus, when a court's decision recognizing a property right has stood unmodified for a significant period of time, it is likely to have been relied upon by a number of people; under those circumstances, an appellate court may choose not to disturb that decision, even if the court is persuaded that it is incorrect. *See, e.g., In re Applications of Langenegger; State ex rel. Bliss v. Dority.* The United States Supreme Court has noted that the doctrine of stare decisis carries particular force when the effect of reexamination of a prior rule would be to overturn long-accepted commercial practice. *United States v. Maine*, 420 U.S. at 528, 95 S.Ct. at 1162, 43 L.Ed.2d at 372, n. 9.

■ We assume the city intended to identify as a rule of property the proposition that the city of Las Vegas is entitled to a pueblo water right with a priority date of 1835. We understand the city's argument to be that it was entitled to partial summary judgment in the form of an order that it had a right to as much water as it needed for municipal purposes, with a priority date of 1835, or in effect a limitation of the issues at trial to quantification of its right. We agree with the district court that there are unresolved factual issues concerning the existence, parameters, and ownership of the right claimed by the city. Under these circumstances, *Cartwright I* would have to contain very clear, specific statements of the laws governing pueblo water rights, for us to be able to say that it answered all questions that the city's motion for partial summary judgment encompassed. Because the decision in *Cartwright I* announced only general principles,

it does not resolve, on the basis of stare decisis, all potential issues presented by the city's motion.

The supreme court held that New Mexico follows California law concerning the pueblo water rights doctrine, yet it is difficult to draw many specific guidelines from the opinion. The supreme court did not, for example, analyze the nature of the pueblo water right beyond the descriptions set forth in the treatises. It did not determine, for example, what uses constitute legitimate municipal uses. It also did not determine the rights of those who might claim a competing pueblo water right or the right to share the city's water right, other than those who relied on the grant to Luis Cabeza de Baca in 1821. We do not know, for example, whether the present city holds the right in trust for all inhabitants of the area occupied by the Las Vegas Land Grant.

■ However, the ultimate disposition of the case is clear. *Cartwright I* determined that the town and the old city were entitled to claim a pueblo water right. Although that determination does not have stare decisis effect (because, for example, there could be a factual challenge to whether the city is actually the successor to a colonization grant), the legal principle on which it is based does. Thus, we hold that *Cartwright I* has stare decisis effect with respect to the proposition that the successor to a colonization grant is entitled to a pueblo water right.

*3. Whether the District Court May Receive Evidence Regarding the Historical Accuracy of the Pueblo Water Rights Doctrine.*

■ The chief question at oral argument before this court appeared to be whether the district court is entitled to receive evidence on the historical accuracy of the pueblo water rights doctrine that the supreme court announced in *Cartwright I.* By denying the city's motion for summary judgment, the district court does not appear to have refused to recognize any of the general principles of law in *Cartwright I,* including the holding that New Mexico recognizes the pueblo water rights doctrine. However, the city has tried to obtain a definitive answer (in the negative) to the above question through a motion in limine, as well as through its motion for partial summary judgment. Thus, we address the question of whether the district court may receive evidence on the historical accuracy of the *Cartwright I* holdings on the pueblo water rights doctrine.

There is a good deal of dispute among contemporary scholars regarding the historical validity of pueblo water rights as described in *Cartwright I.* *See* A. Stevens, *Pueblo Water Rights in New Mexico,* 28 Nat.Resources J. 535 (1988). In fact, it has been recognized only in California and New Mexico.

The California courts have recognized the doctrine for a number of years, but only for the cities of San Diego and Los Angeles. *See City of San Diego v. Cuyamaca Water Co.,* 209 Cal. 105, 287 P. 475 (1930); *City of Los Angeles v. Hunter,* 156 Cal. 603, 105 P. 755 (1909); *City of Los Angeles v. Los Angeles Farming & Milling Co.,* 152 Cal. 645, 93 P. 869 (1908), *appeal dismissed,* 217 U.S. 217, 30 S.Ct. 452, 54 L.Ed. 736 (1910). In a recent opinion, the California Supreme Court reaffirmed its recognition of the right, in part because of the heavy reliance made by the two cities on the doctrine. *See City of Los Angeles v. City of San Fernando,* 14 Cal.3d 199, 123 Cal.Rptr. 1, 537 P.2d 1250 (1975). The court indicated that the doctrine was a rule of property. Texas has rejected the doctrine altogether, finding that there is no basis in the law of New Spain for a pueblo water right. *See In re Contests of City of Laredo,* 675 S.W.2d 257 (Tex.App.1984). Arizona apparently has not had an occasion to consider the doctrine in a published appellate opinion.

*Cartwright I* is the only New Mexico case to recognize the right in a particular city. Santa Fe and Tularosa have both attempted to assert the right, but have failed because they were not founded on a grant of land for purposes of colonization under Spanish–Mexican law. *See New Mexico Prods. Co. v. New Mexico Power Co.,* 42 N.M. 311, 77 P.2d 634 (1937); *State*

*ex rel. Community Ditches v. Tularosa Community Ditch,* 19 N.M. 352, 143 P. 207 (1914). The City of Albuquerque has also raised the issue of a pueblo water right, but it was rejected as being raised in the wrong proceeding. *See City of Albuquerque v. Reynolds,* 71 N.M. 428, 379 P.2d 73 (1962).

We recognize, as did the district court at the hearings on the motion for summary judgment, that neither this court nor the district court may overrule *Cartwright I. Alexander v. Delgado.* We do not view the decision from which the city has appealed as either overruling *Cartwright I* or ignoring it. However, the district court may decide on remand to permit an adequate record to be developed so that ultimately the supreme court will be in a position to overrule *Cartwright I* if it chooses to do so. *See United States v. Maine.* We see no reason to prevent that. In reaffirming its recognition of the pueblo water rights doctrine, the California Supreme Court considered not only the two cities which had relied on it, but also the sufficiency of the showing at trial that the doctrine was historically invalid. We do not interpret *Alexander* to preclude development of an adequate record at trial to allow reconsideration of a precedent on appeal. If *Alexander* were interpreted otherwise, development of case law would be inhibited. We believe the supreme court's ability to develop case law will be best served if, when a district court makes a preliminary determination that the supreme court might reconsider one of its prior decisions, the district court is permitted to allow an offer of proof or otherwise permit the development of an adequate record. Thus, we hold that the district court is not precluded, on the basis of *Alexander,* from receiving evidence regarding the historical accuracy of the pueblo water rights doctrine, if the district court believes that the supreme court might reconsider the general principles announced in *Cartwright I.*

The city attempted to establish, in moving for partial summary judgment, that there are no material issues of fact regarding its reliance on *Cartwright I,* and there-

fore, as a matter of stare decisis, *Cartwright I* should not be overruled. We think the issue of its reliance on *Cartwright I* is only part of the inquiry that the supreme court would make in determining whether it should overrule *Cartwright I. See generally City of Los Angeles v. City of San Fernando* (court noted that adequacy of data and reasoning on which prior decision is based are relevant factors; the court also examined the practical consequences of abandoning the doctrine). Consequently, we decline to reach the question of whether the city made a prima facie showing of sufficient reliance.

The city also argues that it should not be put to the expense of relitigating the rule of property announced by *Cartwright I.* We leave that issue to the sound discretion of the district court judge, who has served as a supreme court justice as well as a judge of this court and whose water law experience is undoubtably at least one of the reasons for his pro tem appointment in the present case.

THE STATE'S APPEAL.

The state's appeal raises a single issue: whether the Gallinas Decree precludes the city's present claim of a pueblo water right. The parties agree that this issue was not raised in *Cartwright I.* Relying on the doctrine of res judicata, the state argues that the litigation resulting in the Gallinas Decree was an attempt to adjudicate rights to the entire flow of the Gallinas River, that the board asserted a claim to a pueblo water right, and that the town was in privity with the board. Consequently, the state contends that the Gallinas Decree bars the claim made by the city in the present proceeding. Alternatively, the state relies on the doctrine of collateral estoppel to argue that, even if the two proceedings do not involve the same cause of action, the dispositive issue in the present case was resolved adversely to the city in the prior proceedings, and the Gallinas Decree precludes the issue from being raised again in the present proceeding. The city contends that the litigation resulting in the Gallinas Decree was not an attempt to adjudicate rights to the entire

flow and that the town was not a party or in privity with the board. We need not address the questions of whether the causes of action in question are the same and whether the parties are the same or in privity. It is clear that under the state's view of the Gallinas Decree, that decree is inconsistent with the decision in *Cartwright I.* "When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata." 1 *Restatement (Second) of Judgments* § 15 (1982). The rule stated governs the effect of a judgment by way of collateral estoppel as well as res judicata. *See id.*, comment c. Assuming, then, that the state's argument is otherwise well-founded, we conclude that the judgment in *Cartwright I* controls and that the state's reliance on the Gallinas Decree is misplaced.

## CONCLUSION.

The district court's order denying the motions for partial summary judgment is affirmed. At the present time, neither the city nor the state has shown that it is entitled to summary judgment. *See generally International Paper Co. v. Farrar* (it is the movant's burden to introduce sufficient evidence for the court to determine that the doctrine of collateral estoppel is applicable). Under these circumstances, the order from which the parties appeal is affirmed. No costs are awarded.

IT IS SO ORDERED.

ALARID and HARTZ, JJ., concur.