T. J. W. CORPORATION, Appellant, v. THE BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK and FRANK J. TAYLOR, as Comptroller of the City of New York, and THE CITY OF NEW YORK, Respondents.

First Department, June 18, 1937.

*Charles R. Barrett* of counsel [*Edward G. Bathon* with him on the brief; *Regan & Barrett*, attorneys], for the appellant.

*Oren Clive Herwitz* of counsel [*Paxton Blair* and *Nelson Rosenbaum* with him on the brief; *Paul Windels, Corporation Counsel*], for the respondents.

TOWNLEY, J.   Plaintiff brought this action to recover the sum of $4,880 allegedly due for extra work performed in connection with a contract between plaintiff and the board of higher education of the city of New York.   It was alleged that $13,794 had already been paid on account and that the balance named was due and owing.   The defendant counterclaimed to recover the amount already paid on the ground that it was extra compensation and a gratuity and, therefore, illegal and void under article 3, section 28, of the New York State Constitution.

The claim arises out of the construction of Hunter College Instruction Unit No. 1.   The plans provided that this building was to rest upon concrete piers starting at firm rock and extending to a fixed elevation.   The elevation was never changed and the length of the piers depended upon the elevation at which firm rock was found.   Under the contract, as we interpret it, plaintiff took the risk of resting the piers on firm rock wherever found, no matter how deep below the surface it had to go to find such rock.

There was annexed to the contract a set of drawings.   The approximate natural grade was given on three of these drawings as elevation 113.   On four other drawings the approximate natural grade was indicated without any stated elevation.   It was specifically stated in the contract that " Any information obtained from the boring records or any information given on the drawings as to the elevations of the existing grades or the elevations of the underlying rock is approximate only, is not guaranteed and does not form part of the contract."   Before making its bid, plaintiff examined a boring plan which was received in evidence.   The borings indicated that rock had been found approximately four feet below the existing grade of 113.   This boring plan, however, contained the following statement in large print:  " NOTE: THESE RECORDS DO NOT FORM PART OF THE CONTRACT."   Nevertheless, plaintiff claims that it had the right to assume before bidding that the rock would be found at elevation 109 because the boring plan showed rock to be approximately four feet below the existing grade.   Rock was actually found at elevation 104 which was a depth of three or four feet below the actual ground elevation

of 107. The concrete piers were, therefore, constructed from elevation 104 up to the grade fixed in the contract. When the difference in elevation was discovered, plaintiff put in a claim for extra work on the theory that the portion of the piers between elevations 107 and 113 was not called for in the contract.

This claim must rest upon the proposition that the elevation of existing grades and the elevation of the underlying rock as given in the boring plan and in three of the contract drawings marked out the limits of the work which plaintiff was required to do under the contract. It seems perfectly clear to us that the contract was explicit in stating that the elevations were approximate only, were not guaranteed and were not even part of the contract. Furthermore, the bidders were directed by other provisions to " examine the site and form their own conclusions as to the exact elevations of the existing grades, the exact elevations of the ground water, the exact formation and character of the underlying rock and all other existing soil conditions." Plaintiff was also required to " accept the site as it stands " and the soil conditions as they " actually exist." Plaintiff also agreed that it " shall make no claims, nor shall any claims be considered or allowed for extraordinary site or soil conditions," that it had " verified all information given in the specifications or shown on the drawings," that it had made its " own estimate of the facilities and difficulties attending the execution " of the work, that its bid was based on its own investigations, and that it had allowed sums sufficient to provide for or against any and all contingencies not otherwise provided for.

We find no fraud or misrepresentation by the board of higher education of the city of New York in the letting of this contract and, indeed, none is even asserted by plaintiff. This type of claim has already been passed on in this State. For instance, in *Foundation Co.* v. *State of New York* (233 N. Y. 177) plaintiff argued that the elevation of the underlying work shown on a boring plan was a representation and that it was entitled to recover as for extra work because rock was found at a much lower elevation. The court said: " If, however, notwithstanding the agreement as to honest mistake, damages might be recovered from the State for misrepresentations, upon which the bidder might rely, the boring sheet was not such a representation. It formed no part of the plans upon which the contract was based. It was not prepared or used for that purpose. It was an independent bit of information or supposed information in the possession of the State, to which the bidder resorted in making the investigations which it was required to make. If it relied upon this paper, it did so at its own risk."

Furthermore, there is no evidence on which the issue whether the representation was made in good faith could be left to the jury because the representation was not incorporated in the contract by specific provision. Furthermore, there is not a scintilla of evidence to put the good faith of the board of higher education in issue. It is immaterial how the original survey from which the elevations were taken was made or why it was made. Certainly, there was no representation as to either the competency of the original surveyors or the purpose for which that survey was made.

There being thus no justification for the allowance of the claim for extra work, the trial justice was warranted in dismissing the complaint and directing judgment on the counterclaim. The Court of Appeals has said in *Weston* v. *State of New York* (262 N. Y. 46) that "extra compensation is compensation over and above that fixed by contract for the work agreed to be done. It would, either in a legal or equitable sense, be in the nature of a gratuity." Extra compensation which has been paid by the State may be recovered either on the theory of mistake of fact as in *Ball* v. *Shepard* (202 N. Y. 247) or under a mistake of law as in *New York City Employees' Retirement System* v. *Eliot* (267 N. Y. 193). In the latter case the Court of Appeals said: "While it is true that it is the general rule that money paid under a mistake of law may not be recovered back, that rule, in certain instances at least, has been held not applicable to payments of public or trust funds by agents of municipalities. * * * The general rule as to payments made by public officers under a mistake of law is stated by text writers as follows: 'Payments of public money made by officials made under a mistake of law may be recovered.' (3 Williston on Contracts, § 1590.)"

The judgment appealed from should be affirmed, with costs.

MARTIN, P. J., O'MALLEY and UNTERMYER, JJ., concur; GLENNON, J., dissents and votes to reverse and grant a new trial.

GLENNON, J. (dissenting). I feel constrained to dissent from the conclusion reached by the majority, upon the primary ground that there were questions of fact which should have been submitted to the jury for its consideration. A short review of the evidence may be necessary to indicate my reasons.

The board of higher education of the city of New York solicited bids for the construction of Hunter College Instruction Unit No. 1, in the borough of the Bronx. The plaintiff being the lowest bidder was awarded the contract on April 15, 1929. The amount agreed upon was $621,400. The drawings which were annexed to the contract indicated that the ground elevation at the site of con-

struction was 113 feet. It was stated in the contract that "any information given on the drawings as to the elevations of the existing grades or the elevations of the underlying rock is approximate only, is not guaranteed and does not form part of the contract."

About seven to ten days before the plaintiff submitted its bid to the board, James A. Waters, its vice-president, who was a licensed engineer, and Joseph Berendes, an estimator employed by the plaintiff, visited the site with a view to determining the general conditions. They found it was a swamp covered by three or four feet of water, and accordingly, they neither could reach nor locate the stakes which were shown on the plot plan for the purpose of checking elevations. As a consequence, they assumed that the elevation of 113 feet which was given by the architect on the drawings was approximately correct. That there was some basis for their assumption is indicated by the testimony of the board's architect who was called by the city, wherein he said, " it is customary to indicate more or less exactly the natural grade on drawings."

Later, after plaintiff entered into the performance of its contract, it discovered that the actual ground elevation was 107 feet and not 113 feet as represented. The mistake was occasioned by reason of the fact that the architect in charge took his figures from a rough survey made some two years before by the students of City College. That survey covered a large tract of land about 1,900 feet in length and 700 feet in width, belonging to the board of higher education, of which tract unit No. 1 formed only a small part. The evidence is clear that this survey was not made as a basis for fixing ground elevation on building plans, but was intended merely for the information of those who were then engaged in filling in proposed streets and avenues. Had the plaintiff been apprised of the fact that the grade elevations were taken from the rough survey made by students for an entirely different purpose, it well might have refused to sign the contract containing the provision which has heretofore been quoted.

The situation thus presented is somewhat analogous to that outlined in the opinion of Presiding Justice HUBBS in *Jackson* v. *State of New York* (210 App. Div. 115; affd. on opinion below, 241 N. Y. 563), wherein a recovery against the State based upon a misrepresentation in its plans was upheld despite a provision in the contract then under consideration, which reads as follows: " 10. The Contractor agrees that he has satisfied himself by his own investigation and research regarding all the conditions affecting the work to be done and labor and material needed, and that his conclusion to execute this contract is based on such investiga-

tion and research, and not on the estimate of the quantities or other information prepared by the State Engineer, and that he shall make no claim against the State because any of the estimates, tests or representations of any kind affecting the work made by any officer or agent of the State, may prove to be in any respect erroneous."

" The principle," said the presiding justice, " that a party to a contract cannot shield himself from his misrepresentations in inducing the other party to enter into it, by inserting a clause like the clause in question, has been enforced in this State and in other jurisdictions in actions between individuals and between individuals and the State and municipalities. [*McGovern* v. *City of New York*, 202 App. Div. 317; affd., on this point, 235 N. Y. 275; *Atlanta Construction Co.* v. *State*, 103 Misc. 233; *Bridger* v. *Goldsmith*, 143 N. Y. 424; *United States* v. *Atlantic Dredging Co.*, 253 U. S. 1; 13 C. J. 420.] "

Plaintiff, here, upon learning of the actual elevations, immediately informed the architect of the board of its discovery, pointing out that, because of the error, it would be compelled to construct an additional six feet of concrete piering and supply extra fill.

A meeting was held at the site on May 31, 1929. It was attended by Thomas J. Waters, the president of plaintiff corporation, James A. Waters, its vice-president, a Mr. Evans, its superintendent, and the board's representative, Mr. Lincoln, who was the architect in the field. At that meeting Mr. Lincoln expressed the opinion that there was something wrong. However, he told plaintiff, in substance, to go ahead with the work, and that if further investigation showed that a mistake had been made it would be paid for it. On June twenty-fourth a meeting was held at the architect's office for the purpose of determining the questions which were the subject of the dispute between the parties. Apparently, at that time it was deemed advisable to obtain the opinion of the corporation counsel. From the record it appears that the latter, possibly mindful of the holding in *Jackson* v. *State of New York (supra)*, wrote that the additional work which became necessary was extra work for which the contractor should be paid.

The architect of the board thereupon requested plaintiff to submit its estimate of the cost of the work. This it did. Its figures, however, were not accepted. An associate architect named Charles B. Meyers was put in charge of the matter. He obtained estimates from three different contractors. He took the average of the three estimates, which was $18,674, and reported that amount as representing the fair and reasonable value of the extra work performed by the plaintiff.

The architects on June 5, 1931, jointly issued a certificate as follows:

"Board of Higher Education,
Hunter College of the City of New York
68th Street and Park Avenue,
New York City.
"Re: Instruction Unit No. 1.
CERTIFICATE — Covering Extra Work due to Error in Grade Elevation.

"GENTLEMEN: We hereby certify that the Thomas J. Waters Co., Contractor for the General Construction Work of Instruction Unit No. 1, have furnished labor and materials in the sum of eighteen thousand six hundred seventy-four dollars ($18,674.00), for the additional concrete, forms, reinforcing steel and earth fill inside and outside of said building, required for the grade elevation error where elevation +113 was shown on the survey furnished the architect and whereas the actual elevation was +107.

"This sum of $18,674.00 is based on the following:

| | |
|---|---|
| Concrete — 360 cu. yds. at $16.50 | $5,940 00 |
| Forms — 11,555 sq. ft. at $.40 | 4,622 00 |
| Reinforcing Steel — 1,600 lbs. at $.07 | 112 00 |
| Fill — 8,000 cu. yds. at $1.00 | 8,000 00 |
| | $18,674 00 |

"Respectfully submitted,
"THOMPSON, HOLMES & CONVERSE,
"By JOHN A. THOMPSON,
CHARLES B. MEYERS."

Thereafter the executive committee of the board of higher education adopted a resolution approving payment because of "grade elevation error." This resolution was approved in writing by the acting chairman and the secretary of the board of higher education. The plaintiff then presented the necessary papers to the comptroller's office for payment. That office, after rechecking the figures, reduced the cost of the additional work to $13,794. The plaintiff accepted a check for this amount under protest, maintaining that it was entitled to the balance of the sum which was agreed upon by the board of higher education.

Thus it will be seen that prior to the time the board of higher education adopted a resolution to approve payment because of "grade elevation error," there was a real dispute between the parties as to their respective obligations. It was determined that the ground elevation error on the plans was a mistake which worked

to the detriment of plaintiff. We may assume, since there is no testimony to the contrary, that plaintiff, before bidding, was unable to check the elevation as designated, for the reason that the entire site was covered with water and was inaccessible. It is further fair to assume that the plaintiff may have had the right to abandon its contract when it discovered the correct elevation, on the ground of mutual mistake. The construction placed upon the contract during the progress of the work by plaintiff and the board of higher education should bind both parties. The city is in no position to assert that the payment made by it was a voluntary one within the meaning of article 3, section 28, of the Constitution of the State of New York. The cases of *New York City Employees' Retirement System* v. *Eliot* (267 N. Y. 193) and *People of State of N. Y.* v. *Fields* (58 id. 491) do not apply to the situation here presented, since they involved simply misinterpretation of statutes.

The judgment should be reversed and a new trial ordered.

Judgment affirmed, with costs.