IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-030

Filing Date: January 8, 2013

Docket No. 31,190

TIERRA REALTY TRUST LLC,
a New Mexico Limited Liability Company,
and all other residential wastewater and sewer
customers of the Village of Ruidoso, New Mexico,
who are similarly situated,

       Plaintiffs/Appellants,

v.

VILLAGE OF RUIDOSO,
NEW MEXICO, a New Mexico
incorporated municipality,

       Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY
Karen L. Parsons, District Judge

Keleher & McLeod, P.A.
Kurt Wihl
Richard B. Cole
Christina Muscarella Gooch
Albuquerque, NM

for Appellants

Atwood, Malone, Turner & Sabin, P.A.
Bryan Evans
Carla Neusch Williams
Roswell, NM

for Appellee

**OPINION**

HANISEE, Judge.

1

**{1}** In this interlocutory appeal, we review the district court's denial of class certification for monetary damages pursuant to Rule 1-023 NMRA. While the district court certified the proposed class of Ruidoso residential sewage and wastewater users for injunctive and declaratory relief under Rule 1-023(B)(2), it barred certification under both Rules 1-023(B)(1)(a) and (B)(3) with respect to monetary damages. We hold that the district court abused its discretion because its decision to deny full class status was not supported by substantial evidence. We therefore reverse and remand for further proceedings consistent with this Opinion.

## I. BACKGROUND

**{2}** The Village of Ruidoso (Defendant) entered into a consent judgment in federal court pursuant to alleged violations of the Federal Water Pollution Control Act. The judgment required Defendant to construct a new "$35 million" wastewater treatment plant in order to comply with federal pollution guidelines for wastewater discharge. In an effort to procure funding for the plant, Defendant passed legislation increasing its wastewater rates for residential users. The first rate increases were incorporated into Defendant's fee structure on November 27, 2007.

**{3}** In response, Tierra Realty Trust, LLC (Plaintiff), a sixty-unit apartment complex for senior citizens, contacted Defendant in April 2008, to protest the rate increases. In May 2008, those discussions resulted in an informal agreement that Plaintiff deposit funds into an interest-bearing escrow account, in lieu of paying the utility fees, until a settlement or court order could be reached. Plaintiff did not deposit funds according to the agreement, and instead continued paying the disputed utility bills to Defendant until August 2009, when it timely filed the complaint in the current case. Plaintiff filed suit on behalf of itself and all other similarly situated residential wastewater and sewer customers, alleging that the rate increases were unreasonable contrary to NMSA 1978, Section 3-18-1(H) (1972) (stating that a municipality may "establish rates for services provided by municipal utilities and revenue-producing projects, including amounts which the governing body determines to be reasonable and consistent with amounts received by private enterprise in the operation of similar facilities"), and discriminatory under the equal protection clause. Plaintiff sought injunctive relief, declaratory judgment, and monetary damages.

**{4}** Thereafter, Plaintiff filed a motion for class certification on all grounds of relief sought, which Defendant opposed, raising the affirmative defenses of voluntary payment, laches, and estoppel. Plaintiff replied that the proposed class acted under duress when it continued to make payments to Defendant after the rate change. After a hearing on the matter, the district court certified the class for injunctive and declaratory relief, but denied class certification for monetary damages. In denying certification, it concluded that although "there are numerous common issues of both fact and law[,]" "[i]ndividual issues regarding voluntary payment and the related issue of duress will predominate over the common issues," such that "the damage[s] claim will be very difficult to manage. Plaintiff filed an application for interlocutory appeal seeking review of the district court's order, which we

granted pursuant to Rule 12-203(A) NMRA.

## II. DISCUSSION

**{5}** In order to obtain certification of a class action, Plaintiff must first establish that all four prerequisites of Rule 1-023(A), commonly referred to as numerosity, commonality, typicality, and adequacy, are satisfied. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Armijo v. Walmart Stores, Inc.*, 2007-NMCA-120, ¶¶ 25-26, 142 N.M. 557, 168 P.3d 129. Then, Plaintiff must show that the class is maintainable under one of several criteria set forth in Rule 1-023(B). *See Amchem Prods.*, 521 U.S. at 614; *Armijo,* 2007-NMCA-120, ¶¶ 25-26. In district court, Plaintiff specifically argued that the proposed class met the criteria of Rule 1-023(B)(1)(a) or (B)(3), contending either that separate causes of action would result in inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant, or that common questions predominate to such a degree that a class action was superior to other methods of adjudication. With respect to damages certification, the district court determined that Plaintiff failed to satisfy both Rule 1-023(A) and (B), and therefore denied class status.

**{6}** "We review the district court's decision to certify or not certify a class action for an abuse of discretion." *Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 12, 147 N.M. 157, 218 P.3d 75. "[A] district court abuses its discretion when it misapprehends the law or if the decision is not supported by substantial evidence." *Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 7, 136 N.M. 599, 103 P.3d 39. Substantial evidence is defined as "relevant evidence that a reasonable mind could accept as adequate to support a conclusion." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. We resolve all disputed facts and indulge all reasonable inferences in favor of the district court's findings. *Id.* "[T]he district court's interpretation of Rule 1-023 is a question of law that is reviewed de novo, as are other questions of law." *Davis*, 2009-NMSC-048, ¶ 12 (citation omitted).

### A. Plaintiff Met the Prerequisites of Rule 1-023(A)

**{7}** The district court found that Plaintiff failed to meet two of the initial prerequisites under Rule 1-023(A): commonality under Rule 1-023(A)(2) and typicality under Rule 1-023(A)(3). We address each in turn, and for reasons stated below, we reverse.

#### 1. Commonality

**{8}** To satisfy the commonality requirement under Rule 1-023(A)(2), Plaintiff must establish that "there are questions of law or fact common to the class[.]" Despite finding that "[Plaintiff] has demonstrated that there are numerous common issues of both fact and law," the district court determined that commonality was not present. In so ruling, it found that "the ramifications of the affirmative defense of voluntary payment and the related issue of duress" rendered "[t]he class regarding the damage claim . . . very difficult to manage." We agree with Plaintiff's contention that the district court "applied an incorrect legal standard[,]

3

requir[ing] reversal." In this regard, we note that Defendant does not argue otherwise on appeal. *See Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 41, 143 N.M. 215, 175 P.3d 309 (stating that where a party declines to address an issue in its answer brief, we treat the party's silence as a concession on the issue).

**{9}** In ruling as it did, it appears that the district court interjected the criteria under Rule 1-023(B)(3) into the commonality prerequisite of Rule 1-023(A) by considering issues of management and predominance. *Romero v. Philip Morris Inc.*, 2005-NMCA-035, ¶ 9, 137 N.M. 229, 233, 109 P.3d 768 ("The[] Rule 1-023(B)(3) prerequisites are commonly referred to as the predominance and superiority requirements . . . . [T]he primary focus of the superiority requirement is the suitability of the class action for management of the litigation."). Nonetheless, "[t]he commonality requirement of Rule 1-023(A)(2) is relatively easily met because it is deemed to require only that a single issue be common to the class." *Berry v. Fed. Kemper Life Assurance Co.*, 2004-NMCA-116, ¶ 42, 136 N.M. 454, 99 P.3d 1166. We note that "the commonality requirement is usually subsumed by the predominance requirement of Rule 1-023(B)(3)," and not the other way around. *Id.*

**{10}** The district court should therefore have found that the commonality prerequisite was satisfied based on its finding "that there are numerous common issues of both fact and law." That finding is supported by substantial evidence, in that the central threshold issue of the class, whether for injunctive or monetary relief, is whether Defendant's rates were unreasonable. We thus reverse the district court and conclude that commonality has been satisfied.

## 2.     Typicality

**{11}** In determining whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Rule 1-023(A)(3), we assess the following: "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Armijo*, 2007-NMCA-120, ¶ 28 (internal quotation marks and citation omitted). This inquiry is meant to "gauge in general how well the proposed class representative's case matches the class factual allegations and legal theories." *Berry*, 2004-NMCA-116, ¶ 43. But "[t]he fit need not be perfect." *Id.* In fact, our caselaw holds that unless that fit varies so greatly as to create a conflict between the named parties and the class, "varying fact patterns in individual claims will not usually defeat typicality." *Id.*

**{12}** In this case, the district court made the following pertinent findings:

> 14.     If the sewer and wastewater rates charged to [Plaintiff] are not reasonable, then the sewer and wastewater rates charged to other members of the class are similarly unreasonable, and thus the unreasonableness of rates paid by [Plaintiff] is typical of the unreasonableness of rates paid by the

class.

> 15.      . . . [Plaintiff]'s equal protection claim is typical of that of the class. . . .

> 18.      The Village . . . treats [Plaintiff] as a typical residential sewer and wastewater customer.

Despite those findings, the court concluded that Plaintiff failed to establish the typicality prerequisite for the potential class' monetary damages claims "based upon the evidence presented, regarding the definition [of] the class as containing those customers who have city water and those who do not; and, further concerning [Defendant's] affirmative defenses of voluntary payment, and the related issue of duress."

**{13}**     Yet, neither of those issues impacts the relevant criteria for typicality. Each member of the class, with or without city water, has the same or similar asserted injury: payment of unreasonable sewer and wastewater rates to Defendant. *See Armijo*, 2007-NMCA-120, ¶ 28 (typicality requires determination of "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." (internal quotation marks and citation omitted)). The district court found that the unreasonableness of the rates charged was typical among class members. It expressly found that although "[s]ewer and wastewater rates charged to [Defendant's] residential customers are not necessarily uniform, depending on whether the customers also use[] Municipal water," the "distinction should not affect, in itself, the certification of the requested class action." Similarly, Defendant's conduct in charging the rates was "not unique to the named plaintiffs." Rather, Defendant's rates were uniform among service classes, as required by law. *See Apodaca v. Wilson*, 86 N.M. 516, 524, 525 P.2d 876, 884 (1974) (holding that a municipality's sewer and wastewater rates must be uniform and non-discriminatory among customers of the same class of services). Should Defendant's rates be determined unreasonable or discriminatory with respect to Plaintiff, other class members will also be deemed to have been injured by the unreasonable rates. *See Armijo*, 2007-NMCA-120, ¶ 28 (stating that in "determining whether the typicality prerequisite is met we ask . . . whether other class members have been injured by the same conduct" (internal quotation marks and citation omitted)).

**{14}**     The fact that Plaintiff and other class members with municipal water service pay a slightly different rate than class members without municipal water service and that affirmative defenses may affect the class members' entitlement to damages differently, does not impact the typicality of the class claims. The representative party's claim does not have to be identical to the claims possessed by every class member. *See Starko v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053 ¶ 106, 276 P.3d 252 (affirming the district court's finding of typicality as a textbook example despite differences as to damages), *cert. granted*, 2012-NMCERT-003, __P.3d __ (Nos. 33,383 & 33,384, March 30, 2012); *see also Armijo*,

2007-NMCA-120, ¶ 30 (affirming the district court's finding of typicality despite unique work environments of plaintiffs and factual differences between individual claims). The slight difference in rates among classes of residential sewer and wastewater users and the impact of any affirmative defenses do "not change the fact that the basic factual elements of the named [plaintiffs'] claims were similar to that of the rest of the class." *Id.* Essentially, Plaintiff alleges that Defendant set unreasonable and discriminatory rates and Plaintiff is entitled to any amount overpaid. The same can be said of all class members. We therefore reverse the district court's determination of typicality because it applied an overly strict typicality standard.

**{15}** Having reversed the district court on commonality and typicality, we conclude that Plaintiff has satisfied all the prerequisites listed under Rule 1-023(A) because the other elements—numerosity and adequacy—were found by the district court to be satisfied. We now address whether the damages class action was maintainable under Rule 1-023(B).

**B.      The District Court Erred in Determining that the Class Action for Damages Was Not Maintainable Under Rule 1-023(B)**

**{16}** Plaintiff must not only meet the basic requirements of Rule 1-023(A), but it must additionally demonstrate that the class action is maintainable under Subsection (B). *Armijo*, 2007-NMCA-120, ¶¶ 25-26. In the district court, Plaintiff argued that the class action for monetary damages could be maintained under Rules 1-023(B)(1)(a) or (B)(3). The district court concluded that Plaintiff failed to satisfy either of these prongs under Subsection (B). We address each subsection in turn.

**1.      Rule 1-023(B)(1)(a)**

**{17}** To qualify as a class under Rule 1-023(B)(1)(a), Plaintiff must establish that "the prosecution of separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . . ." Plaintiff maintains that denial of damages class certification would allow individual suits to produce inconsistent damage awards based on the application of various affirmative defenses, and that such divergent awards would violate Defendant's obligation to provide uniform utility rates among customers of the same class of services. *See Apodaca*, 86 N.M. at 524, 525 P.2d at 884 (establishing uniformity of utility rates to like-situated customers).

**{18}** We disagree with Plaintiff as a matter of law because the possibility of inconsistent damage awards is an insufficient rationale for maintaining a class action under Rule 1-023(B)(1)(a). By its express terms, the rule requires more than merely "inconsistent or varying adjudications." Rule 1-023(B)(1)(a). The inconsistency must establish "incompatible standards of conduct," *id*., that "would impair the opposing party's ability to pursue a uniform continuing course of conduct." 7AA Charles Alan Wright, Arthur R.

6

Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 1773 (3d ed. 2012) (footnote omitted); *see also* Mark A. Perry & Rachel S. Brass, "Rule 23(B)(2) Certification of Employment Class Actions: A Return to First Principles," 65 N.Y.U. Ann. Surv. Am. L. 681, 686-687 (2010) (stating that under Rule 1-023(b)(1), "a class could be certified if . . . a decision on the merits would inescapably . . . alter the substance of the rights of others having similar claims." (alteration in the original) (internal quotation marks and citation omitted)).

**{19}** The inconsistencies in adjudication and the incompatible standards must be so cumbersome "that individual adjudications would be impossible or unworkable." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). Certification under Rule 1-023(B)(1)(a) requires more "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others, or to pay them different amounts." *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (internal quotation marks and citation omitted) (analyzing the federal equivalent of Rule 1-023(B)); *see In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984). Furthermore, when analyzing whether a class action for damages could be certified under the federal equivalent of Rule 1-023(B), the United States Supreme Court explained why class certification for monetary damages under Subsections (B)(1) and (B)(2) was inappropriate for practical, policy, and due process reasons. *Dukes*, 131 S. Ct. 2541, 2558-59. The court concluded that, "it [is] clear that individualized monetary claims belong in Rule 23(b)(3)." *Id.* at 2558; *see Zinser*, 253 F.3d at 1193 (stating that certification under Rule 23(b)(1)(A) is generally "not appropriate in an action for damages").

**{20}** Here, Plaintiff solely relies on the argument that without class certification, different customers would receive inconsistent damage awards. Plaintiff asserts that "awarding damages to [Plaintiff] or to any other individual residential sewer and wastewater customer of [Defendant] would result in discriminatory rates being charged in favor of the customer receiving damages." We disagree because Defendant's legal obligation to set uniform rates among defined classes of customers does not impede its ability to contest refunds based on customer knowledge and behavior. And, as explained above, mere inconsistent damage awards are insufficient to show that individual adjudications would be impossible or unworkable. Inconsistent damage awards would not impair Defendant's ability to pursue a uniform continuing course of conduct in the future, as damages do not provide prospective relief. Defendant's continuing course of conduct would only be affected by the declaratory and injunctive relief sought by Plaintiff, for which class certification has already been granted. Furthermore, as explained by the United States Supreme Court, damages class certification is best sought under Subsection (B)(3), not (B)(1)(a).

**{21}** For these reasons, we affirm the court in concluding that class certification for monetary damages in this case is not appropriate under Rule 1-023(B)(1)(a).

2.      **Rule 1-023(B)(3)**

7

**{22}** Alternatively, Plaintiff moved for class certification for monetary damages under Rule 1-023(B)(3). Rule 1-023(B)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 1-023(B)(3) lists the following matters as pertinent to those two findings:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in [its] management. . . .

There are two competing policies embedded within these class action rules. The first is "to provide a forum for plaintiffs with small claims who otherwise would be without any practical remedy." *Brooks*, 2004-NMCA-134, ¶ 9. The second embodies the goal that any class action be efficient and "a fair method to all parties, including absent class members and defendants." *Id.* For that reason, "dismissal is warranted where individual issues predominate to make the class action unmanageable, even if no alternative remedy exists." *Id.* ¶ 34.

**{23}** Due to those competing policies, district courts "must engage in a rigorous analysis of whether the Rule's requirements have actually been met." *Id.* ¶ 9. It must "understand the substantive law, proof elements of, and defenses to the asserted cause of action to properly assess whether the certification criteria are met." *Id.* ¶ 31. We have even encouraged the district court to at times "probe behind the pleadings and forecast what kind of evidence may be required or allowed at trial[,]" when the issues are not plain enough from the pleadings. *Id.* ¶ 9. We have warned, however, that "plaintiffs are not required to prove their case at the certification stage" and "certification is not an appropriate time to examine the merits." *Id.* Likewise, defendants are not required to prove their affirmative defenses at the certification stage, but merely to demonstrate that they are well pled and are suitable for consideration by the court.

**{24}** The district court denied Plaintiff's motion for damages class certification based upon Defendant's contention that individual issues predominated in the class as a result of Defendant's asserted affirmative defenses of voluntary payment, estoppel, and latches, and the related issue of duress. Its non-certification decision was specifically based on the following findings: (1) "Individual inquiries would have to be made with regard to each residential sewer customer to determine whether he, she, or it, voluntarily agreed to pay the charges for wastewater and sewage services"; (2) "Duress cannot be inferred or found on a class wide basis; rather it is a factual determination that would have to be made as to each and every residential wastewater and sewage user"; and (3) "individual issues [relevant to

8

estoppel and laches] will dominate any common issues of fact related to claims for monetary damages." Accordingly, the district court concluded that "[t]he requirement of predominance ha[d] not been met." The court did not enter a finding regarding whether the class action was superior to other litigation methods.

**{25}** We note that, despite its denial of damages class certification, the district court made several important findings favorable to certification, which relate directly to three of the four factors under Rule 1-023(B)(3). Specifically, the court found that:

> 5. The damages claims of individual class members are not significant enough to warrant individual suits by each class member[.]
>
> . . . .
>
> 38. Despite the Plaintiff's request to other individuals to join the litigation, no unnamed class members have come forward expressing any interest in individually controlling the prosecution of their claims.
>
> 39. No other litigation has been commenced by or against any unnamed members of the class concerning the issues involved in this case. It is appropriate that the issues presented in this case be addressed in this litigation, because the majority of the parties, witnesses, and documents necessary to prosecute and defend the claims raised in this litigation are in this district and because the Court has both personal and subject matter jurisdiction over the parties and issues presented in this case.

**{26}** Plaintiff challenges the district court's denial of damages class certification under Rule 1-023(B)(3), arguing that it is unsupported by substantial evidence. Plaintiff also contends that the district court improperly relied on Defendant's assertion of affirmative defenses in denying certification, and erroneously applied the voluntary payment rule to this case.

**{27}** Initially, we address Plaintiff's contention that the voluntary payment rule should not apply and a right-to-refund should be implied based upon the municipality's obligation to charge reasonable rates pursuant to Section 3-18-1(H). "It is well established that in the absence of a statute permitting a recovery, [fees] paid voluntarily and without compulsion cannot be recovered." *Occidental Life of California v. State*, 92 N.M. 433, 433, 589 P.2d 673, 673 (1979); *Territory v. Newhall*, 15 N.M. 141, 103 P. 982 (1909) *overruled in part by State ex rel. Callaway v. Axtell,* 74 N.M. 339, 393 P.2d 451 (1964) (acknowledging an identical rule in territorial times). Separately, Section 3-18-1(H) does not expressly include any right-to-refund for the payment of excessive rates. *See* § 3-18-1(H) (stating merely that a municipality may "establish rates for services provided by municipal utilities . . . , including amounts which the governing body determines to be reasonable and consistent

with amounts received by private enterprise in the operation of similar facilities"). And, because the Legislature is adept at writing right-to-refund statutes when it intends to do so, we will not imply one here. *See, e.g.*, NMSA 1978, Section 7-1-26(A) (2007) (explicitly creating a right to refund with regard to the payment of state taxes when a "person . . . believes that an amount of tax has been paid . . . in excess of that for which the person was liable"). We therefore decline to embrace Plaintiff's request that we discard the voluntary payment rule and replace it with a right-to-refund not legislatively enacted.

**{28}** We now turn our attention to whether the district court's Rule 1-023(B)(3) analysis is supported by substantial evidence. In making a Rule 1-023(B) determination, the district court should consider anticipated affirmative defenses to "forecast what kind of evidence may be required or allowed at trial." *Brooks*, 2004-NMCA-134, ¶ 9. But the district court's findings with regard to these defenses, including voluntary payment, must be supported by substantial evidence in the record. *See id.* ¶¶ 36-47 (searching the record for substantial evidence that individual issues predominated). Here, the district court did not explain what individual issues it foresaw would arise in assessing affirmative defenses, nor did it support its conclusions with factual evidence from the record. "Although failure to be specific is not necessarily reversible error, it is preferable for the court to identify the issues and 'place on record the circumstances and factors that were crucial to [its] determination . . . . so that counsel and the reviewing court will know and be in a position to evaluate the soundness of [its] decision.'" *Id.* ¶ 36 (alterations in original). Similarly, "it would have been helpful to identify . . . [the] facts it relied on in reaching the decision." *Id.* Nonetheless, we have scoured the record independently in an effort to uncover factual support for the district court's findings. We have been unable to do so, and we must therefore conclude that the district court has abused its discretion.

**{29}** First, the record fails to support a conclusion that individual inquiries predominate with regard to Defendant's defense of voluntary payment and Plaintiff's argument of duress. Duress is defined as an "intentional action by one person presenting such a serious business or financial loss or injury to the other person to the contract that he or she has no reasonable choice or alternative. . . ." UJI 13-838 NMRA. The only element of that definition that is contested here is whether the potential class had any "reasonable choice or alternative" to paying the increased rates. There is ample evidence in the record that Defendant intentionally increased its rates after consulting with government advisors in order to pay for the mandated wastewater treatment plant and to become financially solvent. Additionally, the district court found below that "[a] residence without water, sewer or wastewater service is unsanitary, unsafe, and unhealthy and, thus, is inhabitable." The district court also found that "Defendant has terminated water service to residential customers who fail to pay for their sewer and wastewater services." Neither finding is challenged on appeal and therefore the increase in rates, if unreasonable, presents a "serious business or financial loss or injury" to Plaintiff.

**{30}** With respect to the "reasonable alternative" element of duress, Defendant argued to the district court that the proposed class could have filed "an injunction or temporary

restraining order to avoid any purported injury by refusing to pay the sewage and wastewater fees." Defendant pointed out that Plaintiff engaged in negotiations with Defendant, and Plaintiff could have simply paid the disputed amounts into the escrow account agreed upon by the parties to avoid loss of services. That argument is supported by the district court's finding that "the negotiations between Plaintiff and Defendant regarding the claim of duress are unique to Plaintiff." Even so, two sets of alternatives to be applied among two sub-groups of a class hardly seems like an unmanageable number of individual determinations for the district court to make.

**{31}** In addition, it has yet to be determined whether an injunction or restraining order can be considered a feasible legal remedy available to the proposed class. Other than termination being a possible risk, the record is devoid of any specific evidence of Defendant's policy for terminating services. It is possible that termination results immediately after a customer refuses to pay, or that the process lasts several months. Regardless, the question appears to be a common one across the proposed class. We thus conclude that the district court failed to support its finding that individual issues will predominate regarding the voluntary payment defense and issue of duress with substantial evidence. To the contrary, the record indicates to us the distinct possibility that questions common to the class regarding these matters predominate.

**{32}** Lastly, the district court's reliance on the remaining affirmative defenses of estoppel and laches to deny class status is similarly unavailing. The only factually supported difference among the class, with respect to these two defenses, is that Plaintiff engaged in negotiations with Defendant and then did not avail itself of the resolution. Furthermore, all three elements of equitable estoppel, and three of the four elements necessary to prove laches, turn on Defendant's knowledge, conduct, and prejudice. *See Mayfield Smithson Enters. v. Com-Quip, Inc.*, 120 N.M. 9, 12, 896 P.2d 1156, 1159 (1995) (listing the elements of estoppel); and *Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991) (listing the elements of laches). These defenses both involve questions regarding delays in bringing suit, notice of Defendant's conduct, and the opportunity to institute suit. *Id*. Because there is no evidence in the record that any of the class members, other than Plaintiff, ever asserted their rights against Defendant, all of these issues could be determined on a class-wide basis, with the single exception of Plaintiff's initially negotiated intervening manner of payment. In addition, changes in the utility bills tendered notice uniformly to the potential class, and Plaintiff never argued below that any member of the class was mistaken as to any fact regarding the rate changes prior to paying the rates. And finally, the opportunity to institute suit is the same determination to be made under the duress inquiry we discussed above. Likewise, there is nothing in the record to suggest that any class member's opportunity to institute a suit differed amongst the class.

**{33}** Thus, there is no basis, either in law or in the record, that supports the conclusion that application of the voluntary payment rule, duress, estoppel, or latches would require individual inquiries, let alone individual inquiries voluminous enough to overwhelm the common issues in this case. The record indicates that the class is simply a uniform group

of customers who paid the same sewer and wastewater rates after receiving uniform class-wide notice of pertinent increases. Furthermore, the list of users, their payment history, and their utility bills appear to be easily ascertainable from an electronic database.

**{34}** Based on the dearth of evidence in the record to support the presence of individual inquiries, we must reverse the district court's determination on predominance. We conclude that questions of law or fact common to the members of the class with regard to damages in this case predominate over any questions affecting only individual members. Because the district court did not enter a finding as to whether the proposed "class action is superior to other available methods for the fair and efficient adjudication of the controversy[,]" we remand for it to do so. *See* Rule 1-023(B)(3).

## C.      The Remaining Arguments Are Improperly Presented

**{35}** Defendant devotes well over half of its answer brief to issues of sovereign immunity and the Tort Claims Act, NMSA 1978, Sections 41-4-1 to -27 (1976, as amended through 2010). Those arguments, however, were presented to and denied by the district court in the context of a motion to dismiss. Our grant of review in this case is strictly confined by our Appellate Rules to the consideration of the district court's class certification. *See* Rule 1-023(F) ("The Court of Appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification . . . ."). Under Rule 1-023(F), our interlocutory review is limited to the district court's assessment of Rule 1-023(A)-(B), which sets forth the certification criteria. *Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 30, 139 N.M. 625, 136 P.3d 1035 (analogizing to the federal interpretation that has been "scrupulous about limiting [Fed. R. Civ. P.] 23(f) inquiries to class certification issues" (alteration in original) (internal quotation marks and citation omitted)). Because Defendant did not seek interlocutory review of the motion to dismiss, we decline to address the issue within the narrow context of our review of class certification decisions pursuant to Rule 1-023(F) and *Murken*, 2006-NMCA-064, ¶ 30.

**{36}** Plaintiff also failed to adhere to our appellate rules by requesting our review of issues not "fairly invoked" before the district court. *See* Rule 12-216 NMRA. Plaintiff argues in its brief-and-chief that we should advise the district court on remand "that monetary damages are permissible in a class [action] certified under Rule 1-023(B)(2) NMRA[.]" It contends that "the [d]istrict [c]ourt did not address whether [Plaintiff] could pursue monetary damages under Rule 1-023(B)(2)." Yet, the court never addressed the issue because Plaintiff never presented the argument below.

**{37}** In fact, Plaintiff explained in its motion for class certification that "[Plaintiff] needs to satisfy Rule 1-023(B)(2) . . . in order for this case to be certified as a class action on the claims for declaratory and injunctive relief[,]" and "*must* satisfy either Rule 1-023(B)(1) . . . or Rule 1-023(B)(3) . . . for the class to maintain an action for damages." (Emphasis added.) It directed the district court to *Davis*, 2009-NMSC-048, ¶ 25, for the proposition that "certification of a plaintiff's claim *for declaratory relief* under Rule 1-023(B)(2) . . . [is]

proper despite the presence of a class claim for damages." (Emphasis added.) And under Plaintiff's analysis of Rule 1-023(B), it explained that "if the class prevails on the merits of its claim for injunctive and declaratory relief, the Court will be able to . . . declar[e] that the existing rate structure is invalid[,] . . . what are permissible rates, . . . [and] provide prospective [injunctive] relief to the entire class."

**{38}** Nowhere in any of the pleadings before the district court did Plaintiff request monetary damages under Rule 1-023(B)(2) or explain that relief pursuant to Rule 1-023(B)(2) could include monetary damages. Rather, Plaintiff consistently maintained its view that "[Plaintiff] must satisfy either Rule 1-023(B)(1) or 1-023(B)(3) for the class to maintain an action for damages," and requested only injunctive and declaratory relief pursuant to Rule 1-023(B)(2). Because Plaintiff did not request monetary damages under Rule 1-023(B)(2) before the district court, we refuse to consider unpreserved arguments. *See* Rule 12-216(A) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . .").

## IV.    CONCLUSION

**{39}** For the reasons stated above, we reverse the district court's determinations as to Rule 1-023(A)(2) (commonality), and Rule 1-023(A)(3) (typicality), and hold that Plaintiff has established that the requirements of Rule 1-023(A) are satisfied. We affirm the district court's denial of the class under Rule 1-023(B)(1). We reverse the court's denial of damages class certification under Rule 1-023(B)(3), and conclude that predominance has been satisfied by the class. Lastly, we remand for findings regarding superiority under Rule 1-023(B)(3), which the court failed to consider when it disposed of the motion for class certification based upon its predominance finding.

**{40}    IT IS SO ORDERED.**

 

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *Tierra Realty Trust, L.L.C. v. Vill. of Ruidoso*, No. 31,190**

**APPEAL AND ERROR**
Interlocutory Appeal

Remand
Sufficient or Substantial Evidence

**CIVIL PROCEDURE**
Class Actions
Estoppel
Laches

**FEDERAL LAW**
Federal Law, General

**GOVERNMENT**
Environmental Law
Water and Waste Systems

**JUDGMENT**
Consent Decree
Declaratory Judgment

**PUBLIC UTILITIES AND COMMUNICATIONS**
Rate Making

**REMEDIES**
Damages, General
Injunctions